STATE OF MINNESOTA ex rel. H. W. CHILDS, Attorney General, v. AMERICAN SAVINGS AND LOAN ASSOCIATION.[1]

May 8, 1896.

Nos. 10106—(55).

**Building and Loan Association—Exercise of Corporate Rights—Action to Restrain.**

A building and loan association doing business under the provisions of Laws 1891, c. 131 (see G. S. 1894, §§ 2855-2894), is a corporation having the power to make loans on pledges, and may, in an action by the attorney general, on behalf of the state, under the provisions of G. S. 1894, § 5900, be restrained from exercising any of its corporate rights, whenever it violates the provisions of its acts of incorporation, or any other law binding on it.

**Same—Power of Attorney General to Prosecute.**

The attorney general may bring such action in his discretion, although the public examiner has not filed with him a statement, showing a violation of the law by such association, as provided by G. S. 1894, § 2874. This section is not a limitation on the discretionary power of the attorney general to prosecute such action, except that, if such statement is filed with him, he must proceed against such association as provided by law in the case of insolvent corporations, or institute such other proceedings as the occasion may require.

**Same—Interest of State.**

Whenever a corporation violates the provisions of its acts of incorporation, or any other law binding on it, and so misuses its franchises in mat-

[1] Reported in 67 N. W. 1.

ters which concern the essence of the contract between it and the state that it no longer fulfills the purpose for which it was created, the state has an interest in restraining the further exercise of its corporate rights, and may, by the attorney general, maintain an action so to restrain the corporation, and for a receiver for its property. Complaint considered, and *held*, that it states facts sufficient to constitute a cause of action within this rule.

Appeal by defendant from an order of the district court for Hennepin county, Belden, J., overruling a demurrer to the complaint. Affirmed.

*F. B. Hart*, for appellant.

The attorney general must be a party to actions against corporations which involve only public rights and interests, and he may institute such actions only when such public rights or interests are involved. Green's Brice's Ultra Vires, 712; People v. Albany & S. R. Co., 57 N. Y. 161; People v. Ingersoll, 58 N. Y. 1; State v. Farmers' College, 32 Ohio St. 487. The property of a corporation should not be taken out of the custody of its officers, and entrusted to a receiver, on account of the infidelity or misconduct of a part or all of its trustees. In such case the principle of remedial or preventive justice goes no further than to enjoin or forbid the misconduct or remove the unfaithful officer. 20 Am. & Eng. Enc. Law, 270, 278, and notes; Verplanck v. Mercantile Ins. Co.; 1 Edw. Ch. 84; Waterbury v. Merchants' U. Exp. Co., 50 Barb. 157; Neall v. Hill, 16 Cal. 145, 76 Am. Dec. 508; French v. Gifford, 30 Iowa, 148; Hamilton v. Accessory Transit Co., 3 Abb. Pr. 255; Converse v. Dimock, 22 Fed. 573, 6 Am. & Eng. Corp. Cas. 418; Brierfield Iron Works Co. v. Foster, 54 Ala. 622; Hand v. Dexter, 41 Ga. 454; Howe v. Deuel, 43 Barb. 504; City Pottery Co. v. Yates, 37 N. J. Eq. 543; Einstein v. Rosenfeld, 38 N. J. Eq. 309; Bank Commrs. v. Rhode Island C. Bank, 5 R. I. 12; Ogden v. Kip, 6 Johns. Ch. 160; Havemeyer v. Superior Court, 84 Cal. 327, 24 Pac. 121. Defendant is not insolvent. Plaintiff is not the real party in interest. See People v. Lowe, 117 N. Y. 175, 22 N. E. 1016, per Earl, J.; State v. Minnesota Thresher Manuf'g Co., 40 Minn. 213, 41 N. W. 1020; Attorney General v. City of Salem, 103 Mass. 138; French v. Gifford, 30 Iowa, 148; Verplanck v. Mercantile Ins. Co., 2 Paige, 438; State v. Shively, 10 Or. 267;

The Binghamton Bridge, 3 Wall. 51; Davis v. Gray, 16 Wall. 203; Fletcher v. Peck, 6 Cranch, 87; State of New Jersey v. Wilson, 7 Cranch, 164; Dartmouth College v. Woodward, 4 Wheat. 518; State Bank of Ohio v. Knoop, 16 How. 369; 4 Am. & Eng. Enc. Law, 209; Curran v. State of Arkansas, 15 How. 308. A court of chancery cannot impair the discretionary powers conferred upon the majority by the charter, and decide on their behalf whether the continuance of the enterprise be advisable as a commercial speculation. Morawetz, Priv. Corp. §§ 284, 285, 411, 412; In re Suburban Hotel Co., L. R. 2 Ch. 737; In re Joint-Stock Coal Co., L. R. 8 Eq. 146; Pratt v. Jewett, 9 Gray, 34.

*F. B. Hart* and *Hale, Morgan & Montgomery*, for appellant.

Where there are two acts, one of which is special, and includes the matter in question, and the other is general, and would, if standing alone, include the same matter, and thus conflict with the special act, the special act must be taken to constitute the exception to the general. Crane v. Reeder, 22 Mich. 322; Dewey v. Central Car & Manuf'g Co., 42 Mich. 399, 4 N. W. 179. Where the right is given by statute which provides the method in which it may be enforced, the statutory method must be followed. City of Faribault v. Misener, 20 Minn. 347 (396); Griffin v. Chadbourne, 32 Minn. 126, 19 N. W. 647; Allen v. Walsh, 25 Minn. 543; Johnson v. Fischer, 30 Minn. 173, 14 N. W. 799. If a thing is limited to be done in a particular manner, it excludes every other mode, and affirmative expressions introduce a new rule, and imply a negative of any other. District Tp. of Dubuque v. City of Dubuque, 7 Iowa, 262; Smith v. Stevens, 10 Wall. 321; City of New Haven v. Whitney, 36 Conn. 373; Wallace v. Holmes, 9 Blatchf. 65, Fed. Cas. No. 17,100; Perkins v. Thornburgh, 10 Cal. 189. There are no allegations in the complaint to show a violation of defendant's act of incorporation or of any law binding on it. To constitute such violation, there must be acts amounting to a misuser of the franchise or articles of incorporation, or a violation of the act relating to building and loan associations, or some other act passed by the legislature binding upon the corporation, carried to the extent mentioned in the case of State v. Minnesota Thresher Mnfg. Co., supra. See, also, High, Rec. § 14; State

v. Beecher, 16 Ohio, 358; People v. North River S. Refining Co., 121 N. Y. 582, 24 N. E. 834; Decker v. Gardner, 124 N. Y. 334, 26 N. E. 814; Wheeler v. Pullman I. & S. Co., 143 Ill. 197, 32 N. E. 420.

*H. W. Childs*, Attorney General, and *Geo. B. Edgerton*, for respondent.

The action provided in section 2874 is not exclusive. State v. Educational Endowment Ass'n, 49 Minn. 158, 51 N. W. 908. See In re Oshkosh M. F. Ins. Co., 77 Wis. 366, 46 N. W. 441. It is the plain intention of section 5900 that, for such acts as those alleged in the complaint, the court should, upon proper application, issue its injunction as asked for in this case. Independent of statute, a court of equity has inherent power to visit upon an offending corporation punishment to the extent of depriving it, by injunction, of every power and privilege it acquires with its franchises. Mumma v. Potomac Co., 8 Pet. 281; Thompson v. People, 23 Wend. 581; Commonwealth v. Commercial Bank, 28 Pa. St. 383; Bacon, Ben. Soc. & Life Ins. § 59. A court of equity will wind up the affairs of an association when it is manifest that it cannot accomplish the purpose of its creation. People v. Bristol & R. T. Co., 23 Wend. 236; Chicago Life Ins. Co. v. Needles, 113 U. S. 574, 5 Sup. Ct. 681; Ward v. Farwell, 97 Ill. 593; Southern Minn. R. Co. v. Stoddard, 6 Minn. 92 (150). The right of the attorney-general to enjoin usurpation, excess, or abuse of corporate franchises, and to select his forum and the form of his action, is abundantly established both in England and in this country. See Attorney General v. Railroad Cos., 35 Wis. 425, 523 et seq., and cases cited. The state has sufficient interest to maintain the action. Scranton Elec. L. & H. Co.'s Appeal, 122 Pa. St. 154, 15 Atl. 446; People v. Ballard, 134 N. Y. 269, 32 N. E. 54.

START, C. J. The defendant is a corporation of this state, purporting to do business as a building and loan association under the provisions of Laws 1891, c. 131 (see G. S. 1894, §§ 2855–2894). The state of Minnesota, on the relation of its attorney general, brought this action under the provisions of G. S. 1894, §§ 5900, 5901, against the defendant, to restrain it from further exercising any

of its corporate rights and franchises. The defendant demurred to the complaint on the grounds of a defect of parties plaintiff, and that it did not state facts sufficient to constitute a cause of action. From an order overruling the demurrer it appealed.

The defendant's eight assignments of error may be classified and considered under three general propositions: First. That sections 2873 [2] and 2874 are a limitation upon the power of the attorney general, and prescribe the exclusive conditions upon which he may exercise the power to proceed against building and loan associations, under the provisions of sections 5900 and 5901. Second. That section 5900 does not include corporations of the class to which the defendant belongs. Third. That the allegations of the complaint do not bring this case within the provisions of section 5900.

1. Section 2873 provides that:

"It shall be the duty of such public examiner, at least once in each year and as often as he may deem necessary, to assume and exercise over every building and loan association incorporated under the laws of this state, its business, officers, directors and employés, all the power and authority conferred upon him over banks and other moneyed corporations under the laws of this state; provided, he shall not have the power to suspend the operations of any such association, except in the manner provided in the next succeeding section."

Section 2874 provides that:

"If it shall appear to said public examiner, from any examination made by him, or from any report of any examination made by him, or from the annual report aforesaid, that said corporation is violating its charter or the law, or that it is conducting business in an unsafe, unauthorized or dishonest manner, he shall, by an order under his hand and seal of office addressed to such corporation, direct conformity with the requirements of its charter and of the law. And whenever such corporation shall refuse or neglect to make such report or account as may be lawfully required or to comply with such order as aforesaid, the public examiner shall file a statement in writing with the attorney general, setting forth the facts or particulars in which such alleged violation or refusal consists, which statement shall be prima facie evidence of such violation or refusal; whereupon the attorney general shall institute such proceedings against any such corporations as are now or may hereafter be provided by law in the

[2] Whenever in this opinion reference is made to a statute simply by section number, the reference is to G. S. 1894.

64 M.—23

case of insolvent corporations, or such other proceedings as the occasion may require."

So far as here material, sections 5900 and 5901 provide: (1) That whenever a corporation, having the "power to make loans on pledges, * * * becomes insolvent or unable to pay its debts, * * * or violates any of the provisions of its act or acts of incorporation, or of any other law binding on such corporation, the district court may, by injunction, restrain such corporation and its officers from exercising any of its corporate rights." (2) "Such injunction may be issued on the complaint of the attorney general."

It is not claimed by the attorney general that this action is brought under sections 2873 and 2874, or that the allegations of the complaint are sufficient to constitute a cause of action if the defendant's claim, to the effect that the conditions and terms of these sections are exclusive and conditional to his right to proceed under sections 5900 and 5901, is correct. Is this claim of the defendant correct? We answer the question in the negative.

It is to be noted that section 2580, relating to savings banks, and section 2854, relating to trust companies, contain similar provisions as to the duties of the public examiner and attorney general in respect to such institutions as section 2874, relating to building and loan associations. It therefore follows that if a compliance with such provisions by the public examiner is the exclusive condition upon which the attorney general can proceed in the one case, it is as to all of them. If the claim of the defendant be true, then the attorney general,—a co-ordinate, but independent, officer of the executive department of the state, who holds his office by virtue of the constitution and the will of the people,— may know that the building and loan associations, the savings banks, and the trust companies of the state, are misusing their franchises for the purpose of defrauding the unwary; that they are violating the laws of the state and of their own being; that they are betraying their trusts; and that they have become insolvent,—yet he has no power to call on the courts, under the provisions of section 5900, to restrain such corporations from further exercising their corporate rights, and thereby vindicate the honor and sovereignty of the state, and prevent further spoliation of its citizens, unless, forsooth, a subordinate and appointive officer shall

first file with him a statement to the effect that such corporations have violated or refused to comply with his (the public examiner's) orders. It is too obvious for serious argument that the legislature never intended any such result. The sections of the statute under consideration must be given a reasonable construction, and their various provisions harmonized, if it can be done without disregarding the plain import of the language used.

The meaning of these statutes is not at all obscure, but it lies so openly upon the surface that if we read them in connection with the prior statutes and the common law with reference to the attorney general's powers and duties as to corporations, there is no mistaking it. At the time section 2874 was enacted, the state, by its attorney general, had the power, under both the common law and existing statutes, to proceed against corporations to restrain them from exercising their corporate franchises, or to dissolve them for a willful misuser or nonusuer of their franchises. But whether the attorney general should so proceed or not against any corporation was largely within his discretion; hence, as to building and loan associations, the legislature was unwilling to leave the enforcement of their charter obligations and other statutes passed for the regulation of their business and the safe-guarding of the interests of their patrons to the sole discretion of the attorney general. Accordingly, sections 2873 and 2874, relating to building and loan associations, were enacted, whereby such institutions were placed in a measure under the supervision of the public examiner, and certain powers were given and limitations imposed upon him, but no new powers were conferred on the attorney general, or any limitations or conditions placed upon him. An imperative duty, however, was imposed on him, namely, that he must proceed against such delinquent corporation whenever the public examiner filed with him a statement or complaint setting forth wherein it had violated the law or refused to comply with his lawful orders. If we turn back, and read section 2874 in the light of these suggestions, it is manifest that it contains no limitations upon the power or right of the attorney general to proceed on his own motion against building and loan associations under section 5900. Independently of section 2874, he may, in his discretion, so proceed or not, as he chooses; but when the public

examiner files the statement with him as provided by section 2874, he has no discretion; he must proceed against the corporation.

Counsel for the defendant, in support of his claim, invokes the familiar rule that, where the statute creates a right of action, and also provides the method in which the right may be enforced, the statutory method is exclusive. The rule is not applicable to this case, for when section 2874 was enacted the right and power of the attorney general to proceed against delinquent corporations already existed. Besides, this statute does not purport to give any new right or cause of action, or prescribe any method of procedure by the attorney general in actions against such corporations. The right of the attorney general on his own motion to institute this action under the provisions of section 5900 does not depend upon a compliance by the public examiner with the provisions of section 2874. State v. Educational End. Assn., 49 Minn. 158, 51 N. W. 908.

2. Does section 5900 include corporations of the class to which the defendant belongs?

This section includes "any corporation having * * * the power to make loans on pledges." The defendant has such power. Section 2858, so far as here material, reads as follows:

"For every loan made a note, non-negotiable, or bond, secured by first mortgage on real estate, shall be given, which security shall be in double the value of the loan and satisfactory to the directors, and shall be accompanied by a transfer and pledge of the shares of the borrowers to the association. The shares so pledged shall be held by the corporation as collateral security for the performance of the conditions of said note or bond and mortgage; provided, that the shares, without other security, may, in the discretion of the directors, be accepted as security for the loans for an amount not exceeding their withdrawal value as provided by this act."

It is claimed by defendant that, because its right to make loans on pledges is limited to the stock of its borrowing members, it has not "the power to make loans on pledges," within the meaning of section 5900. There are no exceptions in the statute, and an exception of building and loan associations having power to make loans on pledges of their stock cannot be read into it by any reasonable construction. The defendant is clearly within the provisions of the section referred to.

3. Do the allegations of the complaint bring the case within section 5900?

It is claimed by the attorney general that the complaint shows that the defendant is both insolvent and that it has violated the provisions of its act of incorporation and other laws binding on it. The defendant claims that in legal effect it is a corporate partnership, that it owes no debts and has incurred no obligations, for aught that appears in the complaint, except to its own members; therefore it is not insolvent. And, further, that the facts alleged do not make a case within the other words of the statute "or violate any of the provisions of its act or acts of incorporation or of any other law binding on such corporation," for the reason that such alleged violations relate to matters which concern only the defendant's stockholders, and not the state.

The question whether the defendant is shown to be technically insolvent, as that term is used in the statute, we find it unnecessary to decide, because we are of the opinion that the complaint shows that the defendant has violated, within the meaning of the statute, the laws of its incorporation and other laws binding upon it. In the consideration of this last proposition the defendant's present financial condition and its past management of its trust as shown by the complaint are important factors. It is not every violation of the law applicable to a corporation which will justify a court, by virtue of this statute, in restraining it from exercising its franchises. It is impracticable to lay down a rule applicable to all cases as to what violations of law by a corporation will authorize the court in enjoining it, and taking possession of its property. But it is certain that when its acts, in violation of law, concern the essence of the contract between it and the state, are "so substantial and continued as to amount to a clear violation of the condition upon which the franchise was granted, and so derange or destroy the business of the corporation that it no longer fulfills the end for which it was created," the court must, when called on by the state, restrain it from exercising its franchises. State v. Minnesota Thresher Mnfg. Co., 40 Minn. 213, 41 N. W. 1020. One of the implied provisions of the defendant's act of incorporation (it is immaterial that it was or-

ganized under a general, and not a special, act) was that the franchises conferred upon it should not be misused so as to defeat the ends for which it was organized, and that, when so used, the further exercise of them might be restrained, or they might be wholly forfeited to the state. This important and fundamental provision is necessarily implied in every grant of corporate existence. State v. Minnesota C. R. Co., 36 Minn. 246, 30 N. W. 816; Chicago Life Ins. Co. v. Needles, 113 U. S. 574, 5 Sup. Ct. 681.

It may be suggested that a violation of this implied provision of the defendant's act of incorporation is not fairly within the purview of section 5900. We are of the opinion that it is. This statute must be construed with reference to the common law upon the subject to which it relates. It is true, a court of equity had no jurisdiction, under the old chancery practice, to decree the dissolution of a corporation by a forfeiture of its franchises, either at the suit of an individual or the state; but it is also true that such court had jurisdiction at the suit of the attorney general to enjoin the abuse or misuse of corporate franchises when the misuser was productive of public mischief. 2 Morawetz, Priv. Corp. § 1043. The authorities on this proposition are collected and analyzed in a masterful opinion by Ryan, C. J., in the case of Attorney General v. Railroad Companies, 35 Wis. 425, and the conclusion reached [3] "that courts of equity have such jurisdiction, and that it is a very beneficial jurisdiction, almost essential to public order and welfare."

The end and purpose for which the state granted corporate franchises to the defendant were, as declared in its articles of incorporation, to assist its members in saving and investing money, and in buying and improving real estate, and in procuring money for other purposes, by loaning or advancing, under the mutual building society plan. Now, the allegations of the complaint show that this beneficent purpose for which the defendant received its franchises has been defeated by its unlawful acts, that its violations of this provision of its act of incorporation and other laws binding on it have been so substantial and continued as to amount to a

[3] At page 523.

clear violation of the condition upon which the franchises were granted, and that the defendant can no longer fulfill the end for which it was created.

Assuming, as we must for the purposes of this appeal, the truth of the allegations in the complaint, the defendant has been and is guilty of a gross misuser of its franchises, and of a violation of the laws binding upon it. Instead of assisting its members in saving and investing their money on the mutual building society plan, it has used or appropriated, during the past seven years, of the money of its members, the sum of $672,442, or 65 per cent. of the profits, for expenses in the management of the affairs of the corporation. It has in violation of law invested $202,000 of its funds in the stock of an insurance corporation, which stock was issued to certain of the directors of the defendant, and, although repayment of this amount to the defendant was subsequently in form secured by mortgage on real estate, the whole thereof will be lost to the defendant. It has loaned its funds to its directors, and violated the law in other particulars. It has paid to its officers such extravagant salaries, and so managed its affairs, that all of the profits accruing on the money of its members for seven years and 30 per cent. of the principal have been lost or absorbed. After making due allowance for losses occasioned by depreciation in the value of real estate and by honest mistakes of judgment, the complaint shows that the defendant has so misused its franchises that its assets have become impaired beyond the hope of recovery, and that there must be a substantial loss to the stockholders on every dollar that they have or may pay upon their stock.

Such misuser amounts to a clear violation of law, and the condition upon which its franchises were granted to the defendant, and it can no longer fulfill the purpose for which it was created. It is true that some of its more flagrant violations were years ago, but it has not earned a condonation by subsequent good conduct. On the contrary, the history of its management of the trust committed to it by the state, and its present financial condition as disclosed by the complaint, indicate quite clearly that if it is permitted to continue its management it will be only a ques-

tion of time when the entire money of its members will be absorbed by exorbitant salaries to officers and other extravagant expenses. The practical result will be that the defendant, instead of assisting its members in saving and investing their money, will despoil them of it, unless the state interferes. If the allegations of the complaint are established on the trial, it would seem that the court would be justified in enjoining the defendant from further exercising its franchises and in distributing its property to its creditors and members. Indeed, under such circumstances, to longer permit the defendant to misuse its franchises for the purpose of defrauding its present and future members would be a reproach to the state and to the administration of justice.

It is claimed, however, that the complaint does not show that the state has any interest in this action, that the alleged misconduct of the defendant alone concerns its stockholders. Section 5901, by necessary implication, authorizes the attorney general to bring such an action as this in the name of the state whenever, in his judgment, public interests require it. While this statute does not authorize the attorney general to bring an action for every misuse of a corporate franchise, still it does modify the strictness of the old rule that the state, in order to maintain an action of this kind, must have a direct interest in the result. We need not inquire to what extent the statute modifies the rule, for the allegations of the complaint show that the state has a direct interest in this action, for they show a misuser of its franchises which has defeated the purposes for and the conditions upon which they were granted. The defendant is but the creature of the state. The primary object of its creation was the public welfare. If it misuses its franchise, so as to defeat that object, it becomes not only the right, but the duty, of the state to interfere, and restrain the exercise of its franchises by the defendant. To refuse so to do would be to sanction a public fraud. Attorney General v. Railroad Companies, 35 Wis. 425; People v. Ballard, 134 N. Y. 269, 32 N. E. 54.

The complaint states a cause of action, and the order overruling the demurrer is affirmed.