JOHN A. SJOBERG and Others v. SECURITY SAVINGS & LOAN ASSOCIATION.

July 2, 1898.

Nos. 11,047—(126).

**Enacting Clause of Laws—Constitution.**

Article 4, § 13, of the constitution of the state, which provides that the style of all laws of this state shall be, "Be it enacted by the legislature of the state of Minnesota," is mandatory, and a statute without any enacting clause is void.

**Same—Approval by Governor—Extrinsic Evidence.**

It is not competent, for the purpose of sustaining the validity of a

statute which had no enacting clause when it was sent to and was approved by the governor, to show that it contained an enacting clause when it passed the legislature.

### Building and Loan Association without Debts is not Insolvent under G. S. 1894, c. 76.

Where a building and loan association has no creditors or liabilities except its liability to its stockholders on account of their stock, and there is a deficiency in its assets, so that it cannot mature its stock, or pay back to its stockholders the actual money paid on their stock, it is not "insolvent," in the sense in which the word is used in G. S. 1894, c. 76, providing for the appointment of a receiver for corporations when they are insolvent.

### Same—Appointment of Receiver—Equitable Jurisdiction.

A court of equity has jurisdiction to wind up the affairs of a building and loan association, and for that purpose to appoint a receiver on the application of a minority of its stockholders, whenever the purposes for which it was organized have failed, and it is shown that such action is reasonably necessary for the protection of the interests of such stockholders.

### Findings of Court—Omission of Necessary Facts—Reversal on Appeal.

Where the trial court makes findings of fact as the basis of its order (although it is unnecessary so to do), and omits to find all facts legally necessary to sustain the order, it will be reversed unless the record conclusively shows that the order is right.

### Same—Order not Sustained by Findings.

*Held,* that the findings of fact of the trial court are not sufficient to justify its order appointing a receiver herein.

Action in the district court for Hennepin county to wind up the affairs of defendant corporation, and for the appointment of a receiver for that purpose. From an order, Elliott, J., appointing a receiver, defendant appealed. Reversed.

*Welch, Hayne & Hubachek* and *A. D. Smith,* for appellant.

The constitutional provision (art. 4, § 13) relating to the enacting clause of statutes, is directory merely, and not mandatory; hence the absence of an enacting clause from a statute does not render it invalid. McPherson v. Leonard, 29 Md. 377; City v. Riley, 52 Mo. 424; Swann v. Buck, 40 Miss. 268; City v. Foster, 52 Mo. 513; Seat

of Government Case (dissenting opinion) 1 Wash. T. 124; Powell v. Jackson, 51 Mich. 129; Washington v. Page, 4 Cal. 388; Pierpont v. Crouch, 10 Cal. 315; Pim v. Nicholson, 6 Oh. St. 177; Ex parte Falk, 42 Oh. St. 638. As to other constitutional requirements relating to enactment of statutes which have been held directory merely, see Pacific v. Governor, 23 Mo. 353; People v. Supervisors, 8 N. Y. 317; Hill v. Boyland, 40 Miss. 618; Davis v. Wood, 7 Mo. 162; Hanna v. Russell, 12 Minn. 30 (80); Jump v. Batton, 35 Mo. 193; Doan v. Boley, 38 Mo. 450; Cooley, Const. Lim. 74; Thompson v. Bickford, 19 Minn. 1 (17).

Parol evidence was admissible to show that, when the bill passed the legislature, it contained an enacting clause. State v. Moore, 37 Neb. 13; Sharp v. Merrill, 41 Minn. 492; Meisen v. Canfield, 64 Minn. 513; State v. Robertson, 41 Kan. 200; Lincoln v. Haugan, 45 Minn. 451; State v. Platt, 2 So. C. 150; State v. Francis, 26 Kan. 724; People v. Petrea, 92 N. Y. 128; U. S. v. Allen, 36 Fed. 174; State v. Hagood, 13 So. C. 46, 70; Gildewell v. Martin, 51 Ark. 559; Gardner v. Collector, 6 Wall. 499, 508; State v. City of Hastings, 24 Minn. 78; State v. Peterson, 38 Minn. 143; New York v. Smith, 148 N. Y. 540; Rode v. Phelps, 80 Mich. 598. See also Williams v. Taylor, 83 Tex. 667; Rumsey v. New York, 130 N. Y. 88.

Conceding Laws 1897, c. 250, relating to the voluntary liquidation of building societies to be wholly bad, and the liquidation proceedings taken thereunder by defendant a nullity, yet plaintiffs are not entitled to the appointment of a receiver, because the corporation was not shown to be insolvent, within the meaning of that term, as applied to building associations. Towle v. American B. L. & I. Soc., 61 Fed. 446; Knutson v. Northwestern L. & B. Assn., 67 Minn. 201.

*J. C. Haynes*, at the instance of the Home Savings & Loan Association, by consent filed a brief in behalf of the appellant.

Irrespective of the validity of Laws 1897, c. 250, and conceding the insolvency of appellant, in the sense that its assets are insufficient to reimburse its members the amount they have paid into its treasury, the order of the court appointing a receiver for the purpose of winding up its affairs, and thereby necessarily dissolv-

ing the corporation, was clearly illegal and unjustified. Mere shrinkage of values, or suffering losses, does not constitute legal insolvency of a building association. Knutson v. Northwestern L. & B. Assn., 67 Minn. 201. Our building and loan statute very wisely makes complete provision for adjusting and equalizing the rights of all of the members of an association whenever and as often as a loss shall occur, and it clearly contemplates that any association governed by it, so long as it regards the law, shall not be interfered with, but shall be allowed to conduct its affairs to a final end, whether successful or otherwise. Laws 1891, c. 131, § 27; G. S. 1894, § 2881; Broadwell v. Inter-Ocean, 161 Ill. 327; Chapman v. Young, 65 Ill. App. 131. The authorities are clear that when there is any other remedy which will afford ample protection to those applying for it, a receiver should never be appointed. Etowah v. Wills, 106 Ala. 492; State v. Commercial Bank, 10 Ohio, 535; Smith, Rec. § 226; McGeorge v. Big Stone Co., 57 Fed. 262. Statutes authorizing the appointment of receivers for corporations should be strictly construed in favor of the corporation. High, Rec. § 289; Bangs v. McIntosh, 23 Barb. 591; Smith, Rec. § 221. The insolvency complained of must be in the commercial sense, and of such an extent as to seriously endanger a substantial right; otherwise it alone is not sufficient cause for the intervention of the court. Steinberger v. Independent, 84 Md. 635. See also Wait, Insol. Corp. § 357; High, Rec. § 289; Bangs v. McIntosh, supra; Hale v. Omaha, 33 N. Y. Super. Ct. 39.

The fact that appellant ceased doing business, and went into voluntary liquidation, does not authorize the appointment of a receiver, because chapter 76 does not authorize the appointment of a receiver upon any such ground. In the absence of express statutory authority, the general jurisdiction of equity over corporations does not extend to sequestrating corporate property, and appointing a receiver of the same in aid of judgment creditors. Spooner v. Bay St. L. Syn., 44 Minn. 401; Beach, Rec. §§ 403, 404; 4 Thompson, Corp. § 4539; Benedict v. Columbus, 49 N. J. Eq. 23, 36; Wallace v. Pierce, 101 Iowa, 313; Barton v. International, 85 Md. 14; Mason v. Supreme Ct., 77 Md. 483; Heinbokel v. National S. L. & B. Assn., 58 Minn. 340; Pinkus v. Minneapolis L. M., 65 Minn. 40.

Independently of all other points herein urged, the common law imposes on the members of building associations the duty to endeavor to adjust all of their rights and differences among themselves. Lafond v. Deems, 81 N. Y. 507; Roman v. Woolfolk, 98 Ala. 219, 237; 4 Thompson, Corp. § 4518; Mason v. Supreme Ct., supra. Members have the inherent right to liquidate and wind up their own affairs through the medium of their own chosen agents, provided the plan adopted is equitable, and such agents are capable and trustworthy; and any judicial interference with such right is an abuse of discretionary power. City Pottery Co. v. Yates, 37 N. J. Eq. 543; 1 Morawetz, Priv. Corp. § 285; Pringle v. Eltringham, 49 La. An. 301.

*Fifield, Fletcher & Fifield,* for respondents.

By the overwhelming weight of authority, the constitutional provision relating to the enacting clause of statutes has been held to be imperative. State v. Rogers, 10 Nev. 250; State v. Patterson, 98 N. C. 660; May v. Rice, 91 Ind. 546; Burritt v. Commissioners, 120 Ill. 322; Seat of Government Case, 1 Wash. T. 115.

Extrinsic evidence is incompetent to show that the duly authenticated, enrolled act differs in its contents from the bill passed by the legislature. Stein v. Leeper, 78 Ala. 517; Pangborn v. Young, 32 N. J. L. 29; Standard v. Attorney General, 46 N. J. Eq. 270; Mayor v. Harwood, 32 Md. 471; Ex parte Tipton, 28 Tex. App. 438; Central v. Hearne, 32 Tex. 546; Sherman v. Story, 30 Cal. 253; People v. Burt, 43 Cal. 560; Weeks v. Smith, 81 Me. 538; Green v. Weller, 32 Miss. 650; Ex parte Wren, 63 Miss. 512; Pacific v. Governor, 23 Mo. 353; State v. Swift, 10 Nev. 176; State v. Glenn, 18 Nev. 34; People v. Commissioners, 54 N. Y. 276; State v. Jones, 6 Wash. 452; State v. Clare, 5 Iowa, 509; Duncombe v. Prindle, 12 Iowa, 1; Fouke v. Fleming, 13 Md. 392; Eld v. Gorham, 20 Conn. 8, 16; Williams v. Taylor, 83 Tex. 667; Usener v. State, 8 Tex. App. 177. A material variance in the contents between the bill as passed by the legislature and that presented to and approved by the governor is fatal to the validity of the act. Moog v. Randolph, 77 Ala. 597; Sayre v. Pollard, 77 Ala. 608; Abernathy v. State, 78 Ala. 411; State v. McLelland, 18 Neb. 236; State v. Liedtke, 9 Neb. 462.

The statute being invalid, the district court has power to appoint a temporary receiver by virtue of its inherent jurisdiction as a court of equity, or at all events it is expressly authorized to do so in a proper case under G. S. 1878, c. 76. Whether the power is inherent in a court of equity, or dependent on the statute, the application is addressed to the sound discretion of the chancellor under all the circumstances. State v. Bank of New England, 55 Minn. 139; 6 Thompson, Corp. § 6823; Milwaukee & M. R. Co. v. Soutter, 2 Wall. 510; Verplank v. Caines, 1 Johns. Ch. 57; Rider v. Bagley, 84 N. Y. 461; Lowell v. Doe, 44 Minn. 144. The association being insolvent, and no power being conferred on its directors by statute to dissolve it, or to discontinue its business or to rescind its contracts, the court was not only abundantly justified in appointing a temporary receiver to take charge of its affairs pending the final hearing, but no other course would have been justified. People v. Lowe, 47 Hun, 577; St. Louis v. Edwards, 103 Ill. 472; Consolidated T. L. Co. v. Kansas, 43 Fed. 204; Endlich, Build. Assn. § 511; Knutson v. Northwestern L. & B. Assn., 67 Minn. 201.

START, C. J.

The defendant is a building and loan association, of the class known as "national," incorporated under the laws of this state. The plaintiffs are stockholders of the defendant, and brought this action for the purpose of winding up the affairs of the association, by a receiver to be appointed by the court and under its direction.

The complaint alleges, among other matters, that the defendant is insolvent, but it contains no allegations to the effect that it has any creditors or liabilities, except its stockholders and its liability to them. It also alleges that the assets of the association have become impaired, and the stock is now worth only 50 per cent. of the stockholders' investments; that the officers of the association have fraudulently speculated in its stock, mismanaged its affairs, and are now conducting its affairs at great and unnecessary expense; that the defendant, by its board of directors, on September 13, 1897, pursuant to the provisions of Laws 1897, c. 250, adopted a resolution placing its affairs in voluntary liquidation, and its affairs

are being liquidated by the same directors and officers whose past mismanagement of its affairs was the cause of its insolvency.

The answer denies all charges of mismanagement of the affairs of the association or wrongdoing on the part of or by its officers; and alleges that, certain stockholders having threatened to apply for a receiver of the defendant, its board of directors, by and with the consent of the public examiner, passed the resolution for voluntary liquidation as a safe, speedy, economical and equitable method of winding up its affairs; that the assets of the defendant are being carefully conserved and administered by its officers and directors, who have materially reduced expenses; and that all of the defendant's property and assets are now under the control of the public examiner, pursuant to the provisions of Laws 1897, c. 250.

The plaintiffs moved the court for the appointment of a receiver to take charge of the defendant's property, and to manage its affairs pending the action. The motion was brought on for hearing on an order to show cause, and the trial court held that Laws 1897, c. 250, was unconstitutional, and that the proceedings of the defendant taken thereunder for voluntary liquidation of its affairs were void.

Thereupon the court heard evidence on the part of the respective parties as to the matters at issue between them, and found in effect the following to be the facts:

"(1) That, by reason of losses and the depreciation of the assets of said corporation, it is not possible for said corporation to mature its stock in accordance with the provisions of the contract between it and its stockholders, and that the purposes for which the corporation was organized cannot be carried out.

(2) That the assets of the corporation are not sufficient to pay back to the stockholders the money by them actually paid into said corporation on their stock.

(3) That said corporation is insolvent.

(4) That said corporation has ceased to do business, and is no longer a going concern.

(5) That the interests of the stockholders will be best subserved by the appointment of a receiver."

(6) That the defendant adopted the plans and method for voluntary liquidation referred to in the pleadings, which were approved by the public examiner; and that ever since September 13, 1897, the affairs of the defendant have been in voluntary liquidation, pur-

73 M.—14

suant to such methods, which were taken under the provisions of chapter 250, Laws 1897.

Upon these facts, which were incorporated in its order, the court thereby appointed a receiver as prayed for. The defendant appealed from the order.

1. The act of 1897 in question, authorizing the board of directors of building and loan associations, with the consent of the public examiner, to go into voluntary liquidation, contains no enacting clause whatever. The constitution (article 4, § 13) provides that the style of all laws of this state shall be, "Be it enacted by the legislature of the state of Minnesota." Is this provision mandatory or only directory?

There is a conflict in the authorities upon this question. Of the cases which hold similar constitutional provisions directory, the case of McPherson v. Leonard, 29 Md. 377, may be regarded as the leading one. The constitution of Maryland provided that the style of all laws of that state shall be, "Be it enacted by the general assembly of Maryland;" and the provision was held directory only, and that a failure to comply with it did not render a statute void. There was a vigorous dissent in that case. The constitution of Missouri contains a similar provision; and in the case of City v. Riley, 52 Mo. 424, it was held that the provision was directory only, citing McPherson v. Leonard. In the case of Swann v. Buck, 40 Miss. 268, it was held that where the enacting clause of a statute read, "Be it resolved," etc., instead of, "Be it enacted," etc., it was a substantial compliance with the provision of the constitution, which was practically like our own. This case, however, does not hold that a statute without any enacting clause is valid, for the gist of the decision was, see page 293,

"There are no exclusive words in the constitution negativing the use of any other language, and we think the intention will be best effectuated by holding the clause to be directory only. It is necessary that every law should show on its face the authority by which it is adopted and promulgated, and that it should clearly appear that it is intended, by the legislative power that enacts it, that it should take effect as a law. These conditions being fulfilled, all that is absolutely necessary is expressed. The word 'resolved' is as potent to declare the legislative will as the word 'enacted.'"

There are other cases in which courts have applied the doctrine of directory statutory provisions to constitutional requirements, of which Pim v. Nicholson, 6 Oh. St. 177, is an example, in which it was held, contrary to the unbroken line of decisions in this court, that the constitutional provision that "no law shall embrace more than one subject, which shall be expressed in its title," was directory.

The constitution of the state of Nevada provides: "The enacting clause of every law shall be as follows: 'The people of the state of Nevada represented in senate and assembly do enact as follows.'" Article 4, § 23. There is no essential difference in its legal effect between this language and that of our constitutional provision that "the style of all laws of this state shall be, 'Be it enacted by the legislature of the state of Minnesota.'" In the case of State v. Rogers, 10 Nev. 250, it was held that a statute in which an attempt to comply with the constitutional provisions was made, but the words "senate and" were omitted from the enacting clause, was unconstitutional. The court, in its opinion, cites, compares and analyzes all the decisions upon the question, and reaches the conclusion that the constitutional provision was mandatory.

The courts of Indiana, Illinois and North Carolina have respectively construed a constitutional provision, like the one now under consideration, mandatory. May v. Rice, 91 Ind. 546; Burritt v. Commissioners, 120 Ill. 322, 11 N. E. 180; State v. Patterson, 98 N. C. 660, 4 S. E. 350. In the Seat of Government Case, 1 Wash. T. 115, it was held that a statute without an enacting clause was void, although there was no constitutional provision requiring it.

Mr. Cushing states the rule to be this: An enacting clause is necessary to the validity of every statute, whether required by the constitution or not; and,

"Where enacting words are prescribed, nothing can be a law which is not introduced by those very words, even though others which are equivalent are at the same time used. Where the enacting words are not prescribed by a constitutional provision, the enacting authority must, notwithstanding, be stated, and any words which do this to a common understanding are doubtless sufficient; or the words may be prescribed by rule. In this respect much must depend upon usage." Cushing, Parl. Law, § 2102.

The question whether the entire absence of an enacting clause from a statute renders it void is an open one in this state. In the case of Board of Suprs. v. Heenan, 2 Minn. 281 (330), it was held that the provisions of the constitution prescribing the manner of passing bills in the legislature are imperative, and must be strictly followed. It is true that in the opinion in that case it was incidentally stated that many of the provisions in constitutions and statutes, though explicit in terms, are to be construed to be directory. This remark was purely obiter, and there is nothing in the opinion to suggest that a statute without a head—that is, an enacting clause—would be valid.

Upon both principle and authority, we hold that article 4, § 13, of our constitution, which provides that "the style of all laws of this state shall be, 'Be it enacted by the legislature of the state of Minnesota,'" is mandatory, and that a statute without any enacting clause is void.

Strict conformity with the constitution ought to be an axiom in the science of government. We are not prepared to hold that every provision of the constitution is mandatory, but we do hold that they should all be understood and accepted as mandatory unless a different intention is unmistakably manifest on the face of the provision. Rules which distinguish mandatory and directory statutes should rarely, if ever, be applied to constitutional provisions. Courts tread upon very dangerous ground when they attempt to do so. Cooley, Const. Lim. 93. Unless a constitutional provision shows upon its face that it was intended to be directory, it must be accepted as the imperative mandate of the sovereign people, and not as good advice which legislators and courts may accept or reject as they please. The safety of the state, and the protection of the liberties and rights of the people, demand that this rule be strictly adhered to.

But it is claimed that the provision in question shows that it was intended to be directory only, because it relates to a matter of form, and not of substance, and was intended simply to secure uniformity in the style of all laws.

This is one of the objects intended to be secured by the provision, but not the only one. All written laws, in all times and in all coun-

tries, whether in the form of decrees issued by absolute monarchs, or statutes enacted by king and council, or by a representative body, have, as a rule, expressed upon their face the authority by which they were promulgated or enacted. The almost unbroken custom of centuries has been to preface laws with a statement in some form declaring the enacting authority. If such an enacting clause is a mere matter of form, a relic of antiquity, serving no useful purpose, why should the constitutions of so many of our states require that all laws must have an enacting clause, and prescribe its form. If an enacting clause is useful and important, if it is desirable that laws shall bear upon their face the authority by which they are enacted, so that the people who are to obey them need not search legislative and other records to ascertain the authority, then it is not beneath the dignity of the framers of a constitution, or unworthy of such an instrument, to prescribe a uniform style for such enacting clause. But it is otherwise if an enacting clause be a mere form, devoid of essence or substance. The concession that the object of the constitution, in prescribing the style of the enacting clause of a law, was to secure uniformity, necessarily implies that the matter of an enacting clause was so essential and important as to require uniformity in the mode of expressing it. Surely, it was not the intention to secure uniformity in the style of a useless form.

It is not necessary to go to the extent of holding that, in the absence of any constitutional provision on the subject, a statute without an enacting clause would be void. But we do hold that the framers of our constitution, and the people adopting it, advised by the usages of the past, and the wisdom and legal learning of the men who had framed the constitutions for so many other states, regarded an enacting clause in a law as useful, necessary and proper, and that they therefore anchored in the constitution a requirement that every law should have an enacting clause, and prescribed the form thereof. The words of the constitution, that the style (that is, the mode of expressing or declaring) of all laws of this state shall be, "Be it enacted by the legislature of the state of Minnesota," imply that all laws must be so expressed or declared, to the end that they may express upon their face the authority by which

they were enacted; and, if they do not so declare, they are not laws of this state.

It is, however, claimed by appellant that the law in question contained an enacting clause at the time it passed the legislature, and that the trial court erred in excluding evidence of such fact. The ruling was correct, for the fact itself was immaterial for the reason that a bill, although it passes the legislature, never becomes a law, unless it be presented to the governor pursuant to article 4, § 11, of the constitution. If the bill in question contained an enacting clause when it passed the legislature, it was never presented to the governor, but in place of it a bill was presented to and approved by him containing no enacting clause.

It follows that Laws 1897, c. 250, is void, and that a compliance with its provisions does not necessarily constitute a defense to the application for a receiver in this case.

2. This brings us to the question whether the facts found by the trial court justify its order appointing a receiver. The defendant claims that they do not. The plaintiffs' counsel seek to supplement the findings by reference to the evidence tending to show, as they claim, that the officers of the defendant who are carrying out the scheme of liquidation adopted are unfit persons to have charge of the winding up of its affairs, and that they are pursuing a course injurious to the interests of the plaintiffs.

So far as the plaintiffs are concerned, the order must stand or fall upon the findings of fact. Where the trial court makes findings of fact as the basis of its order (although it is unnecessary so to do), and omits to find all facts legally necessary to sustain the order, it will be reversed, unless the record conclusively shows that the order is right. Wells v. Penfield, 70 Minn. 66, 72 N. W. 816.

The district court may appoint a receiver of a building and loan association on the application of one or more of its stockholders, under G. S. 1894, c. 76, in a proper case, or by virtue of its inherent jurisdiction as a court of equity. To constitute a proper case for appointing a receiver for such associations under chapter 76, it must be shown that the corporation is insolvent, or is unable to pay its debts, or has violated one or more of the provisions of its act of

incorporation or of any other law binding on the corporation.  G. S. 1894, § 5900.

The only fact found by the trial court to bring the case within these provisions is the fact that the defendant is insolvent.  But this fact must be considered in connection with the allegations of the complaint and the other facts found by the court.  The complaint shows that the plaintiffs are not creditors of the defendant, in the usual meaning of the term, but simply stockholders of the defendant; and it makes no claim that the defendant owes anything except to its stockholders.

The charge of insolvency in the complaint is in these words:

"That said corporation is now, and for more than one year last past has been, wholly insolvent, and without sufficient funds to pay back to its stockholders more than one-half of the money paid in by them on account of their stock."

If we read, as we must, this allegation with the first, second and third findings of the court, it is manifest that the defendant is insolvent only in the sense that it is impossible for the corporation to mature its stock according to its contract with its stockholders, and that its assets are not sufficient to pay back to such stockholders the money actually paid on their stock.

Where there are no general creditors or liabilities of the corporation except to its stockholders on account of their stock, such a depreciation of assets does not constitute insolvency, in the sense in which the word is used in chapter 76, but merely a loss of corporate capital, and resulting depreciation in the value of its stock. The statutory remedies for winding up a corporation on the ground of insolvency do not apply to such a case.  Knutson v. Northwestern L. & B. Assn., 67 Minn. 201, 69 N. W. 889.  The case of State v. Bank of New England, 55 Minn. 139, 56 N. W. 575, is not here in point, as the defendant was an insolvent banking corporation, and the plaintiff a creditor.

A court of equity has, however, jurisdiction to wind up the affairs of a corporation when the purposes for which it was organized have failed.  And it would not be difficult to suggest reasons why a court of equity ought to do so in the case of a building and loan association when it would not on the same facts interfere with

the affairs of an ordinary corporation, especially so in an action by the state. See State v. American S. & L. Assn., 64 Minn. 349, 67 N. W. 1.

But the mere fact that a building and loan association or any other corporation has ceased to do business and is no longer a going concern, and that the purposes for which the corporation was organized cannot be carried out, when the corporation is already in process of liquidation, will not justify the appointment of a receiver on the application of one or more dissenting stockholders. To justify the appointment of a receiver under such circumstances, it must be shown that the method of liquidation adopted is inequitable to the plaintiffs, or impracticable, by reason of conflicting interests, or that those having charge of winding up the affairs of the corporation are unfit or improper persons for that purpose, or are unable or unwilling to act, or are pursuing a course injurious to the interests of the plaintiffs, or some other fact tending to show threatened irreparable injury to the interests of the plaintiffs.

There was no finding by the trial court as to any of these matters, and it is not conclusively shown by the record that any of them are true. But it does conclusively appear that the affairs of the corporation are being wound up under the direction of the public examiner by a committee of its directors approved by him. It is true, as claimed, that the law under which this action was taken is void, and that there is no statute giving to the directors of the defendant express authority to go into voluntary liquidation, even with the advice and consent of the public examiner. But that officer is given, by statute, express supervision of the affairs of the association; and, where it is not shown that it is reasonably necessary for a court of equity to take the affairs of the corporation into its own hands to protect the interests of the plaintiffs, it will not appoint a receiver.

We are not to be understood as passing on the question of the sufficiency of the evidence to justify a finding in favor of the plaintiffs upon any or all of the matters suggested. We simply hold that the findings actually made do not go far enough to show that it is necessary, for the protection of the interests of the plaintiffs, that

the court should appoint a temporary receiver for the defendant, and that for this reason the order appealed from must be reversed, and a rehearing on the application for such appointment granted.

So ordered.

MITCHELL, J.

While I concur in the result, I am not prepared to assent to the proposition that the provision of the constitution as to the style of laws is mandatory, and that the absence of an enacting clause renders a statute void.  I assent to the proposition that courts should be very slow in holding constitutional provisions to be merely directory, and that they ought never to do so unless it conclusively appears that the provision relates exclusively to a mere matter of style or form, which neither affects any right nor tends to prevent any wrong.

But, in my judgment, the provision relating to the style of laws is one of exactly that kind.  As stated in the opinion of the court, it had been the custom almost from time immemorial to prefix an enacting clause to every statute; but, as I understand the law, the omission to do so (in the absence of any constitutional provision requiring it) would not invalidate the act.  A reference to the early English and the colonial statutes will show that there was no uniformity in enacting clauses, a great variety of forms being used, according to the taste of the legislative body enacting the law. Prior to the American Revolution it had been customary to state in the enacting clause that the statute was enacted by or with the consent of the reigning sovereign of Great Britain.  This style became inappropriate after the declaration of our independence. Hence it became necessary to adopt some new style; and to this end, and at the same time to obtain uniformity, the former colonies usually inserted a provision in their state constitutions providing what the style of statutes should be.  This was not designed to protect any right or to prevent any wrong, but merely to provide a new and uniform style in place of the old ones, which were no longer appropriate to the changed political conditions.  This is not necessary in order to show by whom the law was passed, for that is apparent from the official publication of the laws or the engrossed

bills on file in the office of the secretary of state or other proper officer, in connection with constitutional provisions as to the legislative department of the government, of which every person is presumed to be cognizant.

As the decision of the majority of the court will, so far as I am personally concerned, be accepted as the settled law of this state, I do not care to say more than thus to briefly state my reasons for thinking that this provision of the constitution should be held to be merely directory.

But even if Laws 1897, c. 250, is not rendered invalid by reason of the absence of an enacting clause, still if, in case of voluntary liquidation under its provisions, the majority of the stockholders should adopt an illegal method of liquidation, or should put in charge unfit persons, who were mismanaging its affairs and sacrificing the rights of stockholders, the district court, by virtue of its inherent equity jurisdiction, would have the power to appoint a receiver to take charge of and administer the corporate assets. If the last clause of the act of 1897 is to be construed as attempting to deprive the courts of this power, I have no doubt it is void; but this would not affect the validity of the remainder of the act.

In the other parts of the opinion of the court I fully concur.

CANTY, J.

I concur with Justice MITCHELL.

BUCK, J.

I dissent.

On July 7, 1898, the following order was entered:

PER CURIAM.

Ordered, on motion of respondents, after hearing the appellant, that the order heretofore made herein be, and it is, modified so as to read as follows:

Ordered that the order appointing a receiver in this case be, and it is hereby, reversed, and the case remanded for a rehearing on the application for the appointment of receiver; but this order shall not affect the right of the receiver named in the order appealed from to retain and control the property of the appellant in his possession by virtue of such order until the lapse of not exceeding 30 days next after the filing of the remittitur in the district court.