CITY OF WINONA *vs.* WILLIAM J. WHIPPLE and others.

August 11, 1877.

Statute—Construction—When Words will be Substituted.—By Sp. Laws 1875, *c.* 13, § 1, it is enacted "that § 2 of *c.* 1, of *c.* 20, Sp. Laws 1867 be amended so that the proviso at the end of the first subdivision shall read as follows: "Provided, the city council," etc., etc. Section 2 of *c.* 1, of said *c.* 20, contains no subdivisions or provisos, and the amendment attempted by *c.* 13, Sp. Laws 1875, is in no way germane to that section. Section 2 of *c.* 4, of said *c.* 20, contains subdivisions and a proviso at the end of the first subdivision, and to that subdivision the amendment mentioned is entirely appropriate, and to no other part of said *c.* 20. *Held,* that to carry out the manifest intention of the legislature, said *c.* 13 is to be read by substituting, in the passage above quoted, "*c.* 4" for "*c.* 1. "

City Charter—When the Legislature may Amend—Amendment Construed—Power to License Sale of Intoxicating Liquors is a Delegated Police Power.—The amendment before mentioned, as enacted by *c.* 13, Sp. Laws 1875, gave the city council of the city of Winona the exclusive right to license persons vending intoxicating liquors within the limits of said city, and further provides that "three-fourths of the money received from the licenses so granted shall be paid to the treasurer of the city of Winona, and one-fourth to the treasurer of the county of Winona." Prior to this amendment the city was entitled, by its charter, to appropriate the money received for such licenses to its own exclusive use. *Held,* that it was competent for the legislature to enact this amendment, since the power of a city to license the sale of intoxicating liquors, and to collect license charges therefor, is a delegated police power, and therefore completely within the control of the legislature. *Held, further,* that under the proper construction of the amendment it is for the city treasurer to receive the entire license charge, as city treasurer, but one-four h of it for the use and benefit of the county. *Held, further,* that it is the duty of the city treasurer to pay over to the county treasurer the one-fourth which he has received for the use and benefit of the county, without waiting for directions from the city authorities, notwithstanding the city charter provides that all funds in the city treasury shall be under the control of the city council, and shall be drawn out upon the order of the mayor and recorder.

This action was brought in the district court for Winona county by the city of Winona, against the defendant Whipple, as principal, and the defendants Henry W. Lamberton, Thomas

Simpson, Frances M. Cockrell, Joseph A. Prentiss and Herman
E. Curtiss, as sureties, upon the official bond of the defend-
ant Whipple, as city treasurer of the city of Winona. The
plaintiff demanded judgment against the defendants for the
sum of $1,617.50, with interest and costs. The case was
tried by the district court, for the county of Winona, *Mitchell,*
J., presiding, who found, among other facts, that the defendant
Whipple, while treasurer of the city of Winona, collected from
applicants for license to sell intoxicating liquors within the
said city the sum of $6,470, which he receipted for as said
treasurer, entered the sum upon the books of the treasury,
and deposited it with the other funds of the city; that he
subsequently reported the receipt of this sum to the city
council, in common with the general city fund, and charged
the city the usual percentage for the collection of the whole of
said sum of $6,470, but credited himself with the sum of
$1,617.50, paid to the treasurer of the county of Winona;
that said percentage was duly paid the defendant for the col-
lection of said money, but that the said sum of $1,617.50 was
paid over to the county treasurer without the authority of the
mayor, recorder or city council. The court further found, as a
conclusion of law, that the plaintiff was not entitled to recover
in this action, and motion for a new trial having been denied,
the plaintiff appealed.

*Wilson & Taylor,* for appellant.

The defendant claims to have acted under the authority of
Sp. Laws 1875, c. 12, which purports to amend the proviso
at the end of the first subdivision of section 2 of chapter 1
of the charter of Winona; but it is clear that this amend-
ment was inoperative, as there was no such proviso in that
section of the charter. Moreover, the right to the profits
arising from the licenses was vested in the city, and the dis-
position of the fund provided for by the charter could not,
therefore, be changed without the consent of the plaintiff.
*Aberdeen* v. *Aberdeen,* 13 Smedes & Marshall, 644; *Aber-*
*deen* v. *Sanderson,* 8 Smedes & Marshall, 663. When the

money was paid into the city treasury it became the money of the city, and could, thereafter, only be paid out on the order of the mayor and recorder, duly authorized by the vote of the city council, (Sp. Laws 1867, *c.* 20, sub. *c.* 4, §§ 5, 6; *Poor* v. *Gains*, 3 Brevard, 396;) the city thereafter was alone legally liable for the same, (*Comm.* v. *Phila.* 27 Pa. St. 497; *Bullwinkle* v. *Guttenburg*, 17 Wis. 601; *Tunbridge* v. *Smith*, 48 Vt. 648; Cooley on Taxation, 498, 599,) and the defendant, a mere municipal officer, (*People* v. *Solomon*, 54 Ill. 39,) had no dominion over the fund. *Dickens* v. *Jones*, 6 Yerg. 483; *Critchfield* v. *Wood*, 16 Ala. 702; *Taylor* v. *Board of Health*, 31 Pa. St. 73.

Again, the defendant is estopped by his report to the city council, and the acceptance of his fees, for the collection of the fund in dispute. Bigelow on Estop. (2d Ed.) 503; 2 Smith Lead. Cas. 133–145, 741–2, 796; Sedgw. on Stat. Con. (2d Ed.) 86, 87, 88; *Board* v. *Board*, Law Rep. 9 Q. B. 48; *Smith* v. *Smith*, 14 Grey, 532; *Van Hook* v. *Whitlock*, 26 Wend. 43; *Hyde* v. *Baldwin*, 17 Pick. 308; *Ferguson* v. *Landram*, 5 Bush. 230, 235–7; *Bodemund* v. *Clark*, 46 N. Y. 354; *Mariner* v. *Mil. & St. P. R. Co.* 26 Wis. 84, 89; *Thompson* v. *Howard*, 31 Mich. 309; *Preston* v. *Jones*, 9 Pa. St. 456; *Burlington* v. *Gilbert*, 31, Iowa, 356, 364–7; *McGregor* v. *Reynolds*, 19 Iowa, 228; *Southland* v. *Perry*, 21 Iowa, 488; *Franklin* v. *Twogood*, 18 Iowa, 515; *Hodson* v. *Life Ins. Co.* 97 Mass. 144; *Bank* v. *N. W. P.* 35 Iowa, 226; *Pierce* v. *Tuttle*, 58 N. Y. 650; *Barker* v. *White*, Id. 205, 214; *Frierson* v. *Branch*, 3 Cent. Law Jour. 334. Even if it therefore could be claimed that the defendant was authorized, under the amendment of the charter, to act as the agent of the county, still it is clear under the circumstances that this construction would not aid the defendant. Neither is the defence admissible in this case that the defendant was not authorized to collect for the city more than three-fourths of the said license money. Cooley on Taxation, 498, 499, n. 5; *Bullwinkle* v. *Guttenberg*, 17 Wis. 601; *Waters* v. *State*, 1 Gill. 302; *Smythe* v. *Titcome*,

31 Me. 272; *Neal* v. *School Comr's*, 27 Me. 221; *State* v. *Balt. & O. R.*, 34 Md. 344; *State* v. *Cunningham*, 8 Blackf. 339. Neither is the plaintiff entitled to merely nominal damages if his right of action be once established. *Evarts* v. *Burgess*, 48 Vt. 205; *Tunbridge* v. *Smith*, Id. 648.

*Lloyd Barber*, for respondents.

It is clear, from the whole context of chapter 13 of the Special Laws of 1875, that the legislature intended to amend section 2 of chapter 4, instead of section 2 of chapter 1, of the city charter. Resort may therefore be had to implication in determining the legislative intent, (Sedgw. Stat. and Con. Law, 250; Cooley Con. Lim. 54, 57, 184; Potter Dwar. Stat. Con. 127, 194, n. 13, 202, n. 19, 209, n. 22; *McCartee* v. *Orphan Asylum*, 9 Cow. 437; *Dodge* v. *Gridley*, 10 Ohio, 173; *McMahon* v. *R. Co.* 5 Ind. 413; *McNamara* v. *R. Co.* 12 Minn. 390; *Bigelow* v. *Railway Co.* 27 Wis. 486; *Durousseau* v. *U. S.* 6 Ct. 314; *Opinion of the Justices*, 22 Pick. 573,) and if the mistake is apparent upon the face of the statute, and the intention can clearly be ascertained from the whole statute, then such intent should be allowed to prevail. Potter Dwar. Stat. Con. 183, n. 5; *Moody* v. *Stephenson*, 1 Minn. 289, (401;) *Karns* v. *Kunkle*, 2 Minn. 270, (316;) *Nichols* v. *Halliday*, 27 Wis. 406; *People* v. *King*, 28 Cal. 266; *Smith* v. *People*, 47 N. Y. 335; *Shrewsbury* v. *Boylstown*, 1 Pick. 105; *Turnpike Co.* v. *McKean*, 6 Hill, 616. It is well established, also, that the legislature had the right to change the charter of the city at any time, and in any particular. 1 Dill. on Municipal Corp. *c.* 4, § 30. The money likewise paid to the county never belonged to the city, and if an order was necessary the plaintiff has sustained no damage, because the money has been paid to the party legally entitled to it.

BERRY, J. By the provisions of section 2, sub-chapter 4, of the amended charter of the city of Winona, (Sp. Laws 1867, *c.* 20,) the city council is authorized to grant licenses to venders of intoxicating liquor, and to fix the price of the same at from $10 to $100. Though not so expressly

enacted, it is to be inferred that the money to be paid for licenses is to be paid into the city treasury, and to be the property of the city.

By Sp. Laws 1875, *c.* 13, § 1, it is provided "that section 2 of chapter 1 of said amended charter be amended so that the proviso at the end of the first subdivision shall read as follows: *Provided,* the city council shall have the exclusive right to license persons vending   *   *   *   intoxicating liquors within the limits of said city, and persons so licensed shall not be required to obtain a license from the board of county commissioners," etc. Section 2 of the same chapter provides that "three-fourths of the money received from the licenses so granted shall be paid to the treasurer of the city of Winona, and one-fourth to the treasurer of the county of Winona." Section 2 of chapter 1 of the amended charter contains no subdivisions or provisos, and the amendment attempted by Sp. Laws 1875, *c.* 13, is in no way germane to that section. Section 2 of chapter 4 of such charter contains subdivisions, and a proviso at the end of the first subdivision, and to that subdivision the amendment is entirely appropriate, and to no other part of the charter. There can be no reasonable doubt that, by some inadvertence, "chapter 1" is used for "chapter 4" in the act of 1875, and, to carry out the manifest intention of the legislature, that act is to be read by substituting "chapter 4" for "chapter 1."

It was entirely competent for the legislature to amend the charter of the city of Winona, as it has done by the act of 1875, which was completely prospective in its scope and operation. The power of the city to license, and collect license charges, is a delegated police power, and therefore completely within the control of the legislature.

Section 2 of the act of 1875 is somewhat obscure. It may mean that the entire charge of a license is to be paid to the city treasurer, and one-fourth of it paid by him to the county treasurer, or it may mean that the applicant for the license shall pay three-fourths of the charge to the city treasurer,

v.24m—5

and the remaining one-fourth to the county treasurer. But on the whole, and mainly in view of the fact that the whole subject of licensing appears to be committed to the city authorities, we are of opinion that the former is the better construction. The consequence is, that the city treasurer receives the entire license charge, as city treasurer, but one-fourth of it for the use and benefit of the county.

Section 5 of chapter 4 of the city charter enacts that all funds in the city treasury shall be under the control of the city council, and shall be drawn out upon the order of the mayor and recorder. This is, by implication, and in effect, to prohibit funds to be drawn from the city treasury except upon the order of the mayor and recorder. But, as respects the license moneys in question, this provision of the charter is controlled by the subsequently enacted requirement of the act of 1875, that one-fourth of the license money shall be paid to the county treasurer. By this requirement it is made the absolute duty of the city treasurer to pay over the one-fourth which he has received for the use and benefit of the county to the county treasurer, without waiting for directions from the city authorities. Having arrived at these conclusions, it is unnecessary for us to consider the other matters presented in the briefs.

Order affirmed.