## JACOB WEIS v. MILTON J. ASHLEY.

FILED DECEMBER 19, 1899. No. 9,072.

1. **Statutes: ENACTMENT: GOVERNOR.** The governor is a part of the lawmaking power, and, in acting on bills presented to him for his approval or rejection, he is engaged in the performance of a legislative duty enjoined upon him by the constitution.

2. ———: **CHANGE IN TITLE OF BILL: CONSTITUTIONAL LAW.** A material change in the title of a bill after it has passed both houses of the legislature, and before its presentation to the governor for his approval or rejection, renders the act unconstitutional and void.

3. ———: ———: ———: **ANIMALS: LIEN FOR GET.** Chapter 3, Session

Laws of 1887, passed both houses of the legislature as an act amendatory of section 40, article 1, chapter 4, Compiled Statutes, 1885, but was enrolled and presented to the governor as amendatory of section 48 of said chapter 4. *Held*, That such change in the title was material, and that the amendatory act is unconstitutional and void.

ERROR from the district court of Fillmore county. Tried below before HASTINGS, J.  *Reversed.*

*John D. Carson*, for plaintiff in error.

References: *Ives v. Norris*, 13 Nebr., 253; *White v. City of Lincoln*, 5 Nebr., 516; *Marvin v. Weider*, 31 Nebr., 775.

*William M. Clark, contra.*

References: *Poffinbarger v. Smith*, 27 Nebr., 788; *State v. Bush*, 25 Pac. Rep. [Kan.], 614; *People v. Nelson*, 27 N. E. Rep. [Ill.], 217; *In re Pinkney*, 27 Pac. Rep. [Kan.], 179; *Easton & A. R. Co. v. Central R. Co.*, 52 N. J. Law, 267; *Tice v. Bay City*, 78 Mich., 209; *County Commissioners v. Hellen*, 72 Md., 603; *Perry v. Gross*, 25 Nebr., 826; *Fenton v. Yule*, 27 Nebr., 758.

SULLIVAN, J.

This suit was instituted by Milton J. Ashley against Jacob Weis to recover the possession of a bay colt eight months old. The officer charged with the execution of the order of delivery being unable to find the animal, the action proceeded as one for damages, and resulted in a verdict and judgment in favor of the plaintiff for $5.40. The defendant, by this proceeding in error, raises an important question of constitutional law, the decision of which disposes of the case, and renders unnecessary an examination of other points relied on for a reversal of the judgment.

The plaintiff's claim to the possession of the colt in controversy is asserted under the provisions of section 40, article 1, chapter 4, Compiled Statutes, 1899, which is as follows:

"Sec. 40. That owners of stallions, jacks, and bulls in

the state of Nebraska have a lien upon the get of such stallion, jack, or bull for the period of nine months after the birth of same for the payment of the services of said stallion, jack, or bull; *Provided,* That the owner of the stallion, jack, or bull shall have filed in the office of the clerk of the county in which such get is owned, a description of the same with date of birth within one hundred and twenty days after the birth thereof. Said lien may be at any time after the filing of said description foreclosed in manner and form as provided by law for foreclosing of chattel mortgages."

The original legislation upon this subject was enacted in 1883. The proviso was added by way of amendment in 1887. The contention of the defendant is that the amendatory act was not constitutionally adopted, and is, therefore, void. From the legislative journals it appears clearly that the title of the act of 1887, as it passed both branches of the legislature, was "An act to amend section 40 of article 1 of chapter 4 of the Compiled Statutes of 1885, entitled 'Animals,' and to repeal the said section so amended." The enrolled bill, which was sent to and which received the approval and signature of the governor, was entitled "An act to amend section 48 of article 1 of chapter 4 of the Compiled Statutes of 1885, entitled 'Animals,' and to repeal the said section so amended." See Session Laws, 1887, p. 70, ch. 3. Section 48 of chapter 4 relates to the inspection of sheep, and is entirely unrelated to the subject embraced in the section sought to be amended. The question for decision is, whether the change in the title of the act after it had passed both branches of the legislature, and before its approval by the governor, was a violation of section 11, article 3, of the constitution, which declares: "No bill shall contain more than one subject, and the same shall be clearly expressed in its title." That section 40 could not be amended by an act professing in its title to amend section 48 is a proposition about which there can be no difference of opinion. See *State v. Tibbets,* 52 Nebr., 228.

But the position for which the plaintiff contends is that the constitutional inhibition has no application to bills after they have passed the legislature. · We think it has. We think the scope and purpose of the provision should not be so limited by construction as to permit a measure of legislation to slough its title altogether, or assume a deceptive one, after having passed the legislature and before being presented to the executive for approval. The governor is a part of the lawmaking power, and, in acting on bills presented to him for approval or rejection, he is engaged in the performance of a legislative duty enjoined upon him by the constitution. "To him as well as to the legislature is confided the business of making laws." See *State v. Crounse*, 36 Nebr., 835; *People v. Supervisor*, 16 Mich., 254; *State v. Deal*, 24 Fla., 293; *In re Executive Communication*, 23 Fla., 298; Cooley, Constitutional Limitations [6th ed.], 184. Constitutional provisions similar to the one above quoted have been adopted in many states. The reasons for their adoption are thus stated by Judge Cooley in his work on Constitutional Limitations: "First, to prevent hodge-podge or 'log-rolling' legislation; second, to prevent surprise or fraud upon the legislature by means of provisions in bills of which the titles gave no intimation, and which might, therefore, be overlooked and carelessly and unintentionally adopted; and, third, to fairly apprise the people, through such publication of legislative proceedings as is usually made, of the subjects of legislation that are being considered, in order that they may have opportunity of being heard thereon by petition or otherwise, if they shall so desire." See Cooley, Constitutional Limitations [6th ed.], p. 172. The people have the right to petition the governor on the subject of proposed legislation (Constitution, art. 1, sec. 19); and, to give practical effect to this right, it would seem to be almost necessary to preserve the titles by which bills have become generally known. ·A protest against the approval of a bill amending section 40 aforesaid would hardly be con-

36

sidered by the governor when acting on a measure which, according to its title, proposed to amend section 48. We think it would violate the letter and spirit of the constitutional safeguard against stealthy legislation to hold that the subject of a bill must be clearly expressed in its title during the progress of the measure through the legislature, but that any misleading or delusive title may be attached to it when it is presented to the governor for approval. The precise point here considered was before the supreme court of Florida in the case of *State v. Green*, 36 Fla., 154, 18 So. Rep., 334. In the course of the opinion Mabry, C. J., said: "The office of the title of an act under constitutions like ours, it is evident, is to control the subject of an act of legislation, and to restrict its provisions to matter properly connected therewith. It may be that the necessity and reasons for the requirement that the subject of an act shall be restricted to the subject expressed in the title as it passes the legislative bodies do not exist with the same urgency as applied to the approval of the law by the governor; but still it is essential that an act have a title which will have a controlling effect over the subject-matter of the act, and if the difference between the title of an act, as it passed the legislative bodies and when approved by the governor, is so essential as to affect the entire act, it can not be said that the same act received the sanction of the entire legislative department of the state." This view of the matter seems to be countenanced, though not expressly decided, in *Stow v. Common Council*, 79 Mich., 595. In *People v. Supervisor, supra*, Cooley, J., said: "I am not prepared to say that an act of the legislature can be valid which, as engrossed for the signature of the governor, would be void if passed by the legislature in that form. A law must have the concurrence of the three branches of the legislative department; and if it differs in an essential particular, when presented to the governor for his signature, from the bill passed by the two houses, there is difficulty in saying that it has been concurred in

by all. See *Prescott v. Trustees Illinois & Michigan Canal*, 19 Ill., 324. And under our constitution the title is not only important, but it is absolutely made to control; so that I do not see how any important change in the title can be said to be immaterial."

Our conclusion is that the act of 1887 (Session Laws, p. 70, ch. 3), amending the prior act "for the protection of owners of stallions, jacks and bulls" (Session Laws, 1883, p. 58, ch. 2), was not adopted in accordance with the requirements of the constitution, and is, therefore, null. The judgment of the district court is reversed, and the cause remanded for further proceedings.

REVERSED AND REMANDED.