STATE ex rel. W. B. DOUGLAS v. SAVINGS BANK OF ST. PAUL.[1]

September 27, 1907.

Nos. 15,215—(23).

**Savings Bank—Sale of Charter.**

A creditor of the insolvent Savings Bank of St. Paul, organized under chapter 23, p. 33, Laws 1867, sought to procure an order directing the receiver to sell the bank's charter. That charter provided, inter alia, for the distribution of net profits remaining after the payment of interest to depositors, according to the shares of stock, to the holders thereof. Subsequent legislation concerning savings banks returned all the net profits to the depositors, and prohibited trustees from having, directly or indirectly, any interest in deposits. It is *held* that such an order would have sanctioned the bank's continued existence after the discharge of the receiver, and have adjudicated that such existence should not be terminated by the judgment to be entered; that such an extension of special privilege was against public policy.

In an action in the district court for Ramsey county by the state on the relation of W. B. Douglas, Attorney General, against the insolvent Savings Bank of St. Paul, A. C. Smith, assignee of diverse depositors and creditors of the bank, filed his petition praying that the receiver be directed to offer for sale the charter of the bank as described in the petition. The case was tried before Kelly, J., who denied the prayer and dismissed the petition. From that order the petitioner appealed. Affirmed.

*Ambrose Tighe,* for appellant.

*E. T. Young,* Attorney General, and *C. S. Jelley,* Assistant Attorney General, for respondent.

*Charles E. Otis,* pro se.

JAGGARD, J.

This is an appeal from an order denying a motion, upon petition of a creditor, that the court require the defendant, receiver of an insolvent bank, the Savings Bank of St. Paul, to sell the bank charter. All the trustees of the bank, with one exception, had resigned in favor

[1] Reported in 113 N. W. 268.

of persons selected by the receiver. All trustees were ready to resign at the receiver's request. The charter could be sold for not less than $5,000, through the execution of a bill of sale, the transfer of the stock, and the substitution of new trustees for the present trustees. The complaint in the main action under which the receiver was appointed prayed for the dissolution of the corporation. The corporation, during the course of some eight years, had never interposed an answer. The receiver very properly took the position that as the administrator of the affairs of the bank he had no interest in the controversy. The trial court denied the petition, on the ground that it was against public policy to order the receiver to sell the charter.

The opinion of the trial court appears to us to have been proper, and the reasons upon which it is based to have been sound. The charter of the bank in question is governed by chapter 23, p. 33, Laws 1867, and subsequent legislation extending the privileges of corporations organized under that law. "When there is a general law providing for the organizing of corporations with certain specified rights, privileges, and franchises, by any person adopting and signing preliminary articles of association, a compliance with the law in this respect would be deemed an acceptance of the proposed grant and the conditions of it, and would constitute a contract to the same extent as though the corporation was created by special legislation." This corporation accordingly was not affected by later laws, which were substituted for and which superseded the law of its incorporation. See opinion of C. M. Start, Attorney General, in 1880, published in "Opinions of the Attorney Generals of Minnesota, 1858–1884," p. 414. The bank, under this legislation, enjoyed a special privilege not possessed in common by savings banks organized in accordance with later legislation. Section 3, c. 117, p. 308, Sp. Laws 1873, provides: "The balance of net profits, after providing for the payment of interest to depositors, according to law and the rules of said association, shall be divided equally according to shares of stock to the holders thereof." The policy of the subsequent legislation is to be found in the present expression on this subject. Section 3016, R. L. 1905, provides that no trustee shall have, directly or indirectly, any interest in the profits; section 3025, that the depositors shall receive all the net profits after paying interest to the depositors, paying necessary expenses, setting

aside surplus fund, etc.  Our attention has also been directed to the holding that the stock in this bank is not within the constitutional provision imposing upon owners of bank stocks generally double liability to creditors in case of the bank's insolvency.  State v. Savings Bank of St. Paul, 87 Minn. 473, 92 N. W. 403.  Appellant, however, aptly points out that the force of the argument based on this fact is materially diminished, if not destroyed, by the more recent expressions of legislative opinion on the liability of stockholders in state banks.  R. L. 1905, § 2985; chapter 137, p. 152, Laws 1907.

It is elementary that "the most important modern private corporations receive their franchises in consideration of the performance of some public duty.  In such cases the state is supposed to impose a certain degree of confidence in the grantee, and hence insists that the duties shall be performed by the particular grantee.  *  *  *  But the rule is settled that the corporation can sell neither the primary nor secondary franchises, which are necessary to the due and proper performance of the public duties imposed upon it by its charter."  Elliott, Priv. Corp. § 126.  It would naturally follow that the trial court should not have directed the sale of the charter in this case in violation of the plain dictates of public policy.  There was an especial propriety in its refusal so to do because of the essentially eleemosynary character of the corporation in question and of the direct and unresisted proceeding for its dissolution.  See Minneapolis Baseball Co. v. City Bank, 74 Minn. 98, 103, 76 N. W. 1024.  No good reason has been assigned for a contrary opinion.  It is, of course, desirable that the receiver should realize as much as possible from available assets.  It is true that the sale of this charter would produce at least $5,000 for the creditors.  This did not, however, justify the court in directing a sale, not of assets, but of special corporate privileges, against public policy. It is immaterial whether the history and statistics of banks show that, so far as public welfare is concerned, banks organized under the Laws of 1867 are better than those organized under the Laws of 1879.  The argument that no matter what possible objection there might be to a going concern can have no pertinence to the dormant ownership of the bank, and that the sale of the charter would not perpetuate anything, is ingenious, but not sound.  The learned trial judge properly refused to lend judicial sanction to the enrichment of the trust by the

proceeds from the transfer of such dormant ownership, although, none the less, the subsequent operation by the vendee might have been prevented or successfully assailed. The order permitting the sale of the charter would necessarily have sanctioned the bank's continued existence after the discharge of the receiver, and adjudicated that such existence should not be terminated by the judgment to be entered. The impropriety of the proposition, under present circumstances, was properly declared at the proper time.

Order affirmed.