# DANIEL F. BULL v. STAFFORD KING.[1]

June 9, 1939.

No. 32,184.

[1]Reported in 286 N. W. 311.

428

George W. Peterson, for appellant.

Kellogg, Morgan, Chase, Carter & Headley, Fletcher, Dorsey, Barker, Colman & Barber, and John L. Connolly, for respondent.

Separate briefs amici curiae were filed by J. A. A. Burnquist, Attorney General, P. F. Sherman, Assistant Attorney General, and Kent C. van den Berg, Special Assistant Attorney General, and by Fowler, Youngquist, Furber, Taney & Johnson.

PETERSON, JUSTICE.

Plaintiff filed a claim with the Minnesota tax commission under L. 1939, c. 446, § 19(c-1), for a refundment of excess of income taxes paid by him. Chapter 446 amends the income tax statutes, L. 1933, c. 405, as amended by Ex. Sess. L. 1937, c. 49. These statutes provide that the commission shall issue a certificate of refundment for the amount of the refund and that the state auditor shall cause the refund to be paid out of the proceeds of the income tax. A certificate was issued to plaintiff, which he presented to the state auditor for payment. The state auditor, being in doubt as to the constitutionality of c. 446 because of a variance in the bill as passed by the legislature and that approved by the governor, refused to issue his warrant.

The variance occurs in § 8. The bill as passed by the legislature[2] and the bill as approved by the governor[3] are printed in the margin

[2]"Section 8. Laws 1933, Chapter 405, Section 27, subsection (d), as amended by Extra Session Laws 1937, Chapter 49, Section 18, is hereby amended so as to read as follows:

"(d) To each mutual savings bank organized and existing as such under the laws of this state, an amount equal to the interest and dividends paid or credited during the taxable year to its depositors."

[3]"Section 8. Laws 1933, Chapter 405, Section 27, Sub-sections (c) and (d) as amended by Extra Session Laws 1937, Chapter 49, Section 18, are hereby amended so as to read as follows:

"To each mutual savings bank organized and existing as such under the laws of this state, an amount equal to the interest and dividends paid or credited during the taxable year of its depositors."

with italics indicating where variance occurs. It appears that (1) the statute amended was referred to in the bill passed by the legislature as subsection (d) and in that approved by the governor as (c) and (d); (2) the singular "is" is used in the former and the plural "are" in the latter; and (3) the subsection was designated as (d) in the bill passed by the legislature and was without designation in the bill approved by the governor. No point having been made of the variance between the words "to" and "of," we pass it as immaterial.

The contention of defendant is that the bill passed by the legislature did not become a law for the reason that it was never presented to the governor for approval and that the bill approved by the governor was not the same bill which the legislature passed. The claim is predicated on the grounds that the two bills differed materially in substance and legal effect in that the bill passed by the legislature did not amend or change subsection (c) of the 1937 law and amended only subsection (d), and that the bill approved by the governor amended and changed both subsections (c) and (d) by substituting therefor § 8 of the 1939 law.

Plaintiff and the *amici curiae* other than the attorney general urge among other things that § 8 may be construed as amending only subsection (d) of the 1937 law and that the bill approved by the governor is the same in substance and legal effect as that passed by the legislature. The attorney general suggests that inquiry into the validity of the enactment of c. 446 is not permissible under the so-called "enrolled bill rule," which he urges us to adopt, and that if we apply that rule the statute approved by the governor may be construed to be the same as that passed by the legislature. Other contentions are made which we do not deem it necessary to state or decide. From the judgment below in favor of plaintiff, that he was entitled to a writ of *mandamus* directing defendant to issue the warrant for the refundment, defendant appeals.

■ The regularity of the enactment of a law may be inquired into and the legislative journals may be examined to ascertain whether the law has been passed in accordance with constitutional

requirements. 6 Dunnell, Minn. Dig. (2 ed.) § 8898; State ex rel. Kohlman v. Wagener, 130 Minn. 424, 153 N. W. 749; State v. Twin City Tel. Co. 104 Minn. 270, 116 N. W. 835; In re Ellis' Estate, 55 Minn. 401, 56 N. W. 1056, 23 L. R. A. 287, 43 A. S. R. 514.

The rule which we follow is sometimes called the "journal entry rule." The attorney general urges us to abandon that rule and adopt the so-called "enrolled bill rule," under which the enrolled bill is conclusive as to the regularity of its enactment and the courts are precluded from examining the question. The basis of the rule is that the record of the enrolled bill imports absolute verity and that the rule is convenient in practice obviating inquiries such as the one now being made. The rule is sustained by many courts of high authority, including the Supreme Court of the United States. Field v. Clark, 143 U. S. 649, 12 S. Ct. 495, 36 L. ed. 294. See 25 R. C. L. p. 895, § 147. It is the rule in England. The King v. Arundel, Hob. 109. We considered the question long ago in Board of Supervisors v. Heenan, 2 Minn. 281 (330) and adopted the "journal entry rule." The history of the question in this state was there reviewed. We pointed out that our constitutional debates indicated that the constitutional requirements relating to enactment of statutes were intended to be remedial and mandatory—remedial as guarding against recognized evils arising from loose and dangerous methods of conducting legislation, and mandatory as requiring compliance by the legislature without discretion on its part to protect the public interest against such recognized evils, and that the validity of statutes should depend on compliance with such requirements with judicial determination of the question in the manner permitted under the "journal entry rule." See Sjoberg v. Security S. & L. Assn. 73 Minn. 203, 75 N. W. 1116, 72 A. S. R. 616. The rule has the merit of preventing a bill from being accepted as law which was not legally enacted.

The "enrolled bill rule" permits bills to become laws which have not been actually passed by the legislature. The rule has been said to be conducive to fraud, forgery, corruption, and other wrongdoings in connection with legislation. Courts applying such a rule

are bound to hold statutes valid which they and everybody know were never legally enacted. Rode v. Phelps, 80 Mich. 598, 45 N. W. 493. While we recognize that the "enrolled bill rule" is upheld by many authorities, the same must be said of the "journal entry rule," which we follow and to which we adhere. The avoidance of the evils that might obtain under the "enrolled bill rule" outweigh the argument in its favor.

A law may be enacted under our constitution only by the concurrence of both houses of the legislature and the governor, or by a two-thirds vote of both houses in case of a veto by the governor. Minn. Const. art. 4, § 11, provides:

"Every bill which shall have passed the senate and house of representatives * * * shall, before it becomes a law, be presented to the governor of the state" for approval.

In approving and vetoing bills the governor performs a legislative duty. Some of the authorities say that he then acts as a component part of the legislature. The duty of presenting bills to the governor after passage rests upon the legislature, which has adopted appropriate rules for that purpose.

The bill presented to the governor for his approval must be the same bill which was passed by the legislature. This requirement is mandatory. If there is a material variance between them the bill presented to the governor cannot be said to be the same bill which was passed by the legislature. In that situation he approves not a bill passed by the legislature, but another. A material variance between the bill passed by the legislature and that approved by the governor invalidates the entire enactment. Sharp v. Merrill, 41 Minn. 492, 43 N. W. 385; Sjoberg v. Security S. & L. Assn. *supra;* West End v. Simmons, 165 Ala. 359, 51 So. 638; Moog v. Randolph, 77 Ala. 597; People ex rel. Dezettel v. Lueders, 283 Ill. 287, 119 N. E. 339; Legg v. City of Annapolis, 42 Md. 203; Stuart v. Chapman, 104 Me. 17, 70 A. 1069; Rode v. Phelps, *supra;* Weis v. Ashley, 59 Neb. 494, 81 N. W. 318, 80 A. S. R. 704; Opinion of the Justices, 76 N. H. 601, 81 A. 170; In re Jaegle, 83 N. J. L. 313, 85 A. 214; State ex rel. Pollard v. Wisconsin State Board, 172 Wis. 317, 177

N. W. 910; 25 R. C. L. p. 887, § 137, note 6. See Kavanaugh v. Chandler, 255 Ky. 182, 72 S. W. (2d) 1003, 95 A. L. R. 273.

Absolute correspondence is not required. Minor discrepancies and clerical errors which do not change the substance and legal effect of the statute will be disregarded. Sharp v. Merrill, *supra;* 59 C. J. p. 588, § 123, notes 1 to 4.

■ The bill approved by the governor may be construed to determine whether or not it differs from the bill passed by the legislature in substance and legal effect, for on the answer of this question depends the validity of the enactment. The bill is construed as if it were a statute. We speak of legislative intention in construing the approved bill as meaning the intention that courts would attribute to the legislature if the statute had been passed in the same form as the approved bill.

In Sharp v. Merrill and Sjoberg v. Security S. & L. Assn. *supra,* the approved bills were construed to determine whether omissions therein resulted in material variance. In the former the variance was held immaterial and the enactment valid, and in the latter it was held material and fatal to the validity of the enactment. In State v. Twin City Tel. Co. *supra,* we construed a constitutional amendment as submitted to the voters to determine whether the omission of a word constituted a material variance from the bill authorizing the submission. In the other cases cited *supra* the rule was applied. See Moog v. Randolph and State ex rel. Pollard v. Wisconsin State Board, *supra.*

■ If the bill approved by the governor were a statute, the rules of construction would require that the reference to subsection (c) be eliminated as an error and that the statute be read as corrected.

Section 8 purports to amend § 18 of c. 49, Ex. Sess. L. 1937, which amends § 27 of c. 405, L. 1933. The last mentioned statute is the Minnesota state income tax law, and § 27 and the amendatory sections mentioned relate to personal credits on income in determining taxable net income for purposes of computing the tax. Subsection (c) of § 18 of the 1937 law relates entirely to intercorporate dividend credits. Subsection (d) thereof provided that building

and loan associations should be entitled to a credit for the amount of interest and dividends paid during the taxable year to the members as members. Section 8 provides that mutual savings banks shall be entitled to a credit for interest and dividends paid or credited during the taxable year to its depositors.

Except for the immaterial substitution of the word "of" for the word "to," the body of the amendment, which is "the most material and important part," Loper v. State, 82 Minn. 71, 73, 84 N. W. 650, 651, is accurately set forth in the bill as approved. The variance arises from the preceding clause, identifying the sections to be amended. If the reference therein to subsection (c) was a clerical error and might be eliminated, the correction of the plural by substitution of the singular would follow as of course.

Whether the intention was to amend subsections (c) and (d) or only subsection (d) is to be determined from the language used and the circumstances and inherent probabilities of the case rather than by any arbitrary rule. Of course, if so intended, the legislature might amend both sections by substituting the one adopted. We are not concerned with the question of the power, but of the intention, of the legislature to make such an amendment.

The circumstances and the probabilities indicate that the intention was to adopt a new section by § 8 which was to be inserted in the place of subsection (d) of the 1937 law, and that there was to be no amendment of subsection (c) at all. Subsection (d) of the 1937 law was rendered unnecessary by the enactment of § 2(c) of c. 446, under which building and loan associations were to be exempt from the income tax. The thing to do then was to repeal subsection (d) of the old law. At the same time it was deemed advisable to add a new subsection to § 18 of the 1937 law relating to mutual savings banks (we were informed that there is only one such bank in the state) in view of the anticipated enactment of H. F. 1378, which was a bill for an act imposing an excise tax on banks measured by income and taxing dividends from banks. The new subsection was to allow mutual savings banks a credit for payments and credits of interest or dividends to depositors during the

taxable year. Since all banks were to be taxed on the basis of income by H. F. 1378, such dividends and interest received by mutual savings banks might have been taxable if the bill had been enacted. But that would have been contrary to the provisions of law under which such savings banks are organized, which provide that all the income belongs to the depositors. 2 Mason Minn. St. 1927, §§ 7707 and 7717; State ex rel. Douglas v. Savings Bank of St. Paul, 102 Minn. 199, 113 N. W. 268. Presumably the depositors are taxable on the interest or dividends received by them. The purpose of the new subsection was to avoid taxing such banks for income which in law belongs to their depositors. Since the old subsection (d) was the last subsection of § 18, it was logical that the new subsection be put in its place. The legislative intention was to repeal the old subsection (d), adopt the new subsection, and designate it as subsection (d). By providing that the old subsection (d) should be amended so as to read as the new subsection (d) the repeal of the former and the enactment of the latter would have been accomplished.

It appears that all that was done was relevant and appropriate to an intention so to amend the old subsection (d) and was entirely foreign to anything pertaining to subsection (c). The purpose of subsection (c) is to prevent multiple taxation of certain intercorporate dividends. In carrying out the legislative purpose to amend subsection (d) there was no apparent reason for dealing with such dividends. Where it appears, as it does here, that the legislature intended to amend a certain section of the statute and all the amendatory provisions are appropriate only to accomplish that intention, and the amendatory act refers to sections which are not germane to the legislative intention and not appropriate to the contemplated legislative action, the inference is that there has been some mistake or error in the reference. City of Winona v. Whipple, 24 Minn. 61.

Legislative enactments like other writings are not to be defeated by mere clerical errors or omissions in referring to and identifying the statute or section thereof to be amended. An amendatory act will not be held invalid because it incorrectly states the num-

ber of the statute to be amended if it can be ascertained otherwise from the amendatory act with reasonable certainty. Matters erroneously included will be eliminated, Ilg Electric Ventilating Co. v. Conner, 172 Minn. 424, 215 N. W. 675; State v. Robinson, 32 Or. 43, 48 P. 357; McLendon v. City of Columbia, 101 S. C. 48, 85 S. E. 234, 5 A. L. R. 990, and note, and erroneous references will be corrected by the court. Billings v. Board of Co. Commrs. 78 Minn. 9, 80 N. W. 777; City of Winona v. Whipple, *supra;* State v. Cross, 44 W. Va. 315, 29 S. E. 527; Consolidated School Dist. v. Hackmann, 302 Mo. 558, 258 S. W. 1011; Worthington v. District Court, 37 Nev. 212, 142 P. 230, L. R. A. 1916A, 696, Ann. Cas. 1916E, 1097; Tatlow v. Bacon, 101 Kan. 26, 165 P. 835, 14 A. L. R. 269.

We have not given any weight to the fact that H. F. 1378 failed to become a law because of the governor's veto. The claim was that its failure to become a law has rendered § 8 unnecessary. But the purpose of § 8 was to provide for such an act as that provided for in H. F. 1378. It might be important if a similar law were passed in the future. We are satisfied that the reference to subsection (c) was a clerical error or mistake. It has no place in the statute and should be eliminated as surplusage.

The rule that an amendatory act providing that the amended act shall be amended "so as to read as follows" impliedly repeals everything in the amended act which is not reënacted, followed in Rundlett v. City of St. Paul, 64 Minn. 223, 66 N. W. 967. Shadewald v. Phillips, 72 Minn. 520, 75 N. W. 717, and other cases collected in 6 Dunnell, Minn. Dig. (2 ed. & Supps.) § 8928, is no obstacle to applying the rule that clerical errors may be corrected and rejected as the case may require.

Rules of construction are mere aids in ascertaining the legislative intent. Being founded on reason and experience, they are neither ironclad nor inflexible. They have force only as suggestions to the judicial mind. The rules yield when an intention contrary to the inference ordinarily suggested by them is ascertained, Gerdts v. Gerdts, 196 Minn. 599, 265 N. W. 811, and are to be resorted to only so long as they furnish aid. State ex rel. Maryland Cas. Co. v. District Court, 134 Minn. 131, 158 N. W. 798.

Ordinarily the suggestion of repeal of the amended law except as reënacted is strong and not easily overcome. In the instant case that inference is strengthened by the use of the plural which could apply to both subsections (c) and (d).

Implicit in the rule is the assumption that the amendatory act correctly identifies the statute or section to be amended. Where there is error or mistake in the reference to the statute or part thereof to be amended, the legislative intention prevails and the correction may be made by construction. In City of Winona v. Whipple, *supra*, we construed Sp. L. 1875, c. 13, § 1, which provided "that § 2 of c. 1" of the amended charter of the city of Winona "be amended so that the proviso at the end of the first subdivision shall read as follows:" setting forth the proposed amendment. It appeared that the amendment was germane to c. 4, but not to c. 1, and that the reference to the latter was an inadvertence. We held that the statute would be read as if the reference were to c. 4, to which it apparently referred. That case involved a correction by supplying the right chapter number. On the same principle, part of a reference erroneously included may be eliminated and entirely disregarded, where the amendment is introduced by the words "amended so as to read as follows" as it would be in other cases. People v. Penman, 271 Ill. 82, 85, 110 N. E. 894. In Otis v. People ex rel. Raymond, 196 Ill. 542, 63 N. E. 1053, the eliminated part of the erroneous reference was disregarded as surplusage.

The inference that the reference to subsection (c) was a mistake or error outweighs any suggestion of intention to amend or repeal it. That part of § 8 which refers to subsection (c) in identifying the subject matter of the amendment is a clerical error which may be disregarded. The bill approved by the governor may be read as if the necessary correction had been made. So read, there is no substantial difference in substance and legal effect between the act passed by the legislature and that approved by the governor, with the result that L. 1939, c. 446, was constitutionally enacted.

Affirmed.

Mr. Justice Hilton, being incapacitated by illness, took no part.