# C. H. FREEMAN, JR. v. ED J. GOFF AND OTHERS.[1]

July 21, 1939.

No. 32,234.

[1]Reported in 287 N. W. 238.

*Ed J. Goff,* County Attorney, *Per M. Larson,* Assistant County Attorney, *R. S. Wiggin,* City Attorney, *John F. Bonner,* Assistant City Attorney, *J. A. A. Burnquist,* Attorney General, *M. Tedd Evans,* Assistant Attorney General, and *Kent C. van den Berg,* Special Assistant Attorney General, for appellants.

*Faegre, Benson & Krause* and *Armin M. Johnson,* for respondent.

*Fowler, Youngquist, Furber, Taney & Johnson, amici curiae.*

JULIUS J. OLSON, JUSTICE.

This suit was brought under our uniform declaratory judgments act to determine "the validity and construction" of L. 1939, c. 444, "and to determine and obtain a declaration of plaintiff's status and rights thereunder," his contention being that the act as passed by the legislature is not the same as the enrolled bill approved by the governor and for that reason violates Minn. Const. art. 4, § 11, which provides that "every bill * * * passed * * * shall, *before it becomes a law,* be presented to the governor" for approval (italics supplied) and, further, that the act is constitutionally objectionable because it subjects plaintiff to penalties which are not uniformly enforced under the act against all persons similarly situated. The court held with plaintiff and made findings and ordered judgment to that effect. Judgment was entered accordingly, and defendants have appealed.

The facts are not in dispute and may be thus summarized: Plaintiff is a duly licensed "on sale" liquor dealer in Minneapolis and operates a cafe and bar there. Attached to the exterior of his premises is a large neon illuminated sign suspended from the corner of the building advertising the sale of beer. The court found

the cost thereof to be "approximately $400." Within his place of business is another sign 20 by 28 inches advertising the sale of intoxicating liquors. These signs when placed in their respective positions, and as since maintained, are not violative of any local ordinance or state law unless the mentioned act makes them such. So the case hinges upon the validity of that enactment. The material portions of the purported act, as signed by the governor, read:

"Section 1. No sign of any kind printed, painted, electric or illuminated, advertising intoxicating liquor or nonintoxicating malt liquor containing not more than 3.2 per cent of alcohol by weight, shall be permitted on the exterior of, or immediately adjacent to, any premises licensed to sell said beverages, or any or all of them at retail, *nor shall any such exterior signs be permitted upon or adjacent to the public streets and highways of this state or in a position where such signs will be visible to travelers upon such streets or highways.*

"Section 2. Any such sign now or hereafter placed upon premises, or immediately adjacent thereto, licensed to sell said beverages, or any or all of them [at retail], shall be removed on or before the expiration of a period of 90 days next following the passage of this act. Provided, however, that any sign, costing in excess of $1,000.00, and constructed of such shape and design as to fit a particular location, need not be removed.

"Section 3. No sign of any kind printed, painted, electric or illuminated, advertising intoxicating liquor or non-intoxicating malt liquor containing not more than 3.2 per cent of alcohol by weight, shall be permitted in or upon the interior of any premises licensed to sell said beverages, or any or all of them [at retail], which sign shall exceed 18 inches by 27 inches, or 486 square inches in size."

(The words in italics of § 1 were not in the bill passed by the legislature. The words "at retail" quoted within brackets in §§ 2 and 3 were not present in the enrolled act approved by the governor but were a part of the original bill passed by the legislature.)

The court was of opinion that the "discrepancies which appear between the enrolled bill [the one receiving the governor's approval] and the bill passed by the legislature * * * constitute material variance rather than clerical errors," and as such rendered the enactment void. It was of the view that the entire act fell because the variance between the two bills is a material one and that as such the rule of severability does not apply. Defendants' claim is that the italicized portion of § 1, while constituting a "spurious portion" of the act, does not preclude the court from applying the rule of severability. They say that the presence of an unconstitutional provision does not authorize the court to declare the remainder void unless all the provisions of the act are so essentially and insepa-rably connected and so interdependent that it cannot be assumed the legislature would have passed the valid provisions without the invalid portions.

■ This court is firmly committed to the so-called "journal entry rule," under which "the regularity of the enactment of a law may be inquired into and the legislative journals may be examined to ascertain whether the law has been passed in accordance with con-stitutional requirements." Bull v. King, 205 Minn. 427, 429, 286 N. W. 311, 312. Applying that rule to the facts here appearing leaves no doubt that the enrolled bill receiving the governor's ap-proval is essentially a different act from the one passed by the legislature.

■ In Bull v. King, *supra,* we also said (205 Minn. 431, 286 N. W. 313):

"The bill presented to the governor for his approval must be the same bill which was passed by the legislature. This requirement is mandatory. If there is a material variance between them, the bill presented to the governor cannot be said to be the same bill which was passed by the legislature. In that situation he approves not a bill passed by the legislature, but another. A material vari-ance between the bill passed by the legislature and that approved by the governor invalidates the entire enactment." (Citing many cases.)

■ Clearly, then, the decisive question is whether the bill passed by the legislative body is (205 Minn. 432, 286 N. W. 313) in "substance and legal effect" the same as the one receiving the governor's approval, "for on the answer of this question depends the validity of the enactment." As we have seen, the italicized portion of § 1 of the enrolled bill contains not only a prohibition against certain signs on the "exterior" of the licensed premises, but also a prohibition against such signs being "permitted upon or adjacent to the public streets and highways of this state or in a position where such signs will be visible to travelers upon such streets or highways." No argument is needed to demonstrate that this portion of the enrolled bill is not only a material, but, we think, a vital, variance between the bill passed and the one signed by the governor.

The argument that a variation is not different from an unconstitutional provision which may be stricken from a statute and yet leave the remainder intact falls because it ignores the fact that the unconstitutional provision exists in a statute validly enacted, while a material variance prevents any part of the act from ever becoming a statute. The subdivisions of an act are but parts of the whole. Under our constitution (art. 4, § 11), "every bill * * * passed * * * shall, *before it becomes a law,* be presented to the governor" for approval. (Italics supplied.) Here it is apparent that the bill as passed by the legislature has never been presented to the governor nor approved by him. Without such presentation and approval it cannot become a valid law. And, the variance being a material one, the rule announced in Bull v. King, *supra,* and the cases cited to sustain that view is that [205 Minn. 431, 286 N. W. 313], "a material variance between the bill passed by the legislature and that approved by the governor invalidates the entire enactment."

■ As was said by this court in Sjoberg v. Security S. & L. Assn. 73 Minn. 203, 212, 75 N. W. 1116, 1118, 72 A. S. R. 616:

"Strict conformity with the constitution ought to be an axiom in the science of government. * * * Unless a constitutional provision shows upon its face that it was intended to be directory,

it must be accepted as the imperative mandate of the sovereign people, and not as good advice which legislators and courts may accept or reject as they please. The safety of the state, and the protection of the liberties and rights of the people, demand that this rule be strictly adhered to."

It therefore necessarily follows that the result reached by the trial court is right, and its judgment is affirmed.

MR. JUSTICE STONE took no part.

MR. JUSTICE HILTON, being incapacitated by illness, took no part.