80 N.J. Super. 523 (1963)
194 A.2d 353
APPLICATION OF EDWIN FISHER AND HARRY SZKOLAR, APPLICANTS FOR AN ORDER ADJUDICATING CHAPTER 152 OF THE LAWS OF 1962 TO BE NULL AND VOID IN ACCORDANCE WITH REVISED STATUTES OF NEW JERSEY 1:7-4 AS AMENDED.
Superior Court of New Jersey, Appellate Division.
Argued September 30, 1963.
Decided October 11, 1963.
*524 Before Judges GAULKIN, LEWIS and LABRECQUE.
Mr. Stephen B. Wiley argued the cause for applicants (Messrs. Meyner and Wiley, attorneys).
Mr. David J. Goldberg, Deputy Attorney General, argued the cause for Attorney General (Mr. Arthur J. Sills, Attorney General of New Jersey, attorney; Mr. William L. Kirchner, Jr., of counsel).
Mr. John Kandravy argued the cause for intervenors (Messrs. Shanley & Fisher, attorneys).
The opinion of the court was delivered by GAULKIN, J.A.D.
Fisher and Szkolar (hereafter the applicants) filed an "Application" to this court, pursuant to N.J.S.A. 1:7-1 et seq., to have chapter 152 of the Laws of 1962, N.J.S.A. 33:1-12.31 et seq., adjudged void, alleging that it had not been passed in accordance with our Constitution and statutes. After the filing of the application, applicants moved, on September 9, to have determined the procedure to bring the matter on for hearing. Cf. In re McGlynn, 58 N.J. Super. 1, 6 (App. Div. 1959). On that date the Attorney General appeared to defend the law, and leave to intervene was granted, pursuant to N.J.S.A. 1:7-5, to Waverly Liquors, Crown Wine & Liquor Company and Lipton's *525 Wines & Liquors. After hearing counsel we adjourned the matter to September 30 to afford the Attorney General the opportunity to make a formal motion to dismiss the application upon the grounds advanced by him orally, and we authorized the intervenors to join in the motion. Notice of the application and of the impending motion was given by the court to the President of the Senate and the Speaker of the General Assembly. Excellent briefs were filed and the motion was very ably argued on September 30.
The application alleges that when said chapter 152 was introduced in the General Assembly on February 13, 1962, as Assembly Bill No. 415, section 1 of the bill read as follows:
"1 1. On and after the effective date of this act no person, as the same is
2 defined in section 33:1-1 of the Revised Statutes, shall, except as hereinafter
3 provided, acquire an interest in more than a total of 2 alcoholic beverage
4 retail licenses, but nothing herein shall require any such person who
5 has, on the effective date of this act, an interest in more than 2 such licenses
6 to surrender, dispose of, or release his interest in any such license or licenses."
The bill was given a first reading by title and was referred to the Committee on Judiciary which, on March 26, 1962, reported it favorably without amendment. On that date, according to the Minutes of the General Assembly, "said bill, having been so reported, was taken up, read a second time, considered by sections, agreed to, and ordered to have a third reading."
On April 2, on motion of the sponsor of the bill, the bill was placed back on second reading for the purpose of amendment. Among the amendments then adopted were the following:
"Amend page 1, section 1, line 3, omit `an' insert `a beneficial.'"
"Amend page 1, section 1, line 5, before `an' insert `such.'"
*526 According to the Minutes of the General Assembly of April 2, the bill as amended was immediately "taken up and read a second time, considered by sections, agreed to, ordered to be reprinted, and to have a third reading."
The bill was reprinted, but the reprint departed from the text of the amendments to section 1. Instead of merely inserting "such" before "an" in line 5, "such" was substituted for "an," so that the reprint read "such interest" instead of "such an interest," as follows:
"1. On and after the effective date of this act no person * * * shall, except as hereinafter provided, acquire [an] a beneficial interest in more than a total of 2 alcoholic beverage retail licenses, but nothing herein shall require any such person who has, on the effective date of this act, [an] such interest in more than 2 such licenses to surrender, dispose of, or release his interest in any such license or licenses."
On the reprint there appeared the following:
"Explanation  Matter enclosed in bold-faced brackets [thus] in the above bill, is not enacted and is intended to be omitted in the law."
Thereafter, on April 9, 1962, Assembly Bill No. 415 was read for the third time, but by title only, and passed by a vote of 37 to 10. Applicants contend that most of the members of the Assembly did not have the reprint before them when they voted and, in any event, could not have been aware of the difference between the bill as read on second reading and the reprint, since they voted upon the bill only by its title, and must have thought they were voting on the bill which they had considered "section by section," after amendment, on its second reading.
The Senate passed the bill as it appeared in the final reprint, with the words "such interest" instead of "such an interest"; the Governor signed it in that fashion, and it now so appears as N.J.S.A. 33:1-12.31.
The application alleges that the bill did not become law because:
*527 "13. The version of the said amended Assembly Bill No. 415 which was considered by sections and given second reading in the General Assembly, the version of said amended bill which was held over for the constitutional calendar day waiting period between second and third reading and then given third reading and passed in the General Assembly, the version of said amended bill which was passed in the Senate, and the version of said amended bill which was approved by the Governor, were not one and the same."
For this proposition applicants rely principally upon N.J. Const. (1947), Art. IV, Sec. IV, par. 6; In re Jaegle, 83 N.J.L. 313 (Sup. Ct. 1912), and In re Kornbluh, 134 N.J.L. 529 (Sup. Ct. 1946).
The Attorney General moves to dismiss the application on two grounds. First, he argues that the application shows on its face that the bill is a valid enactment since the final reprint was voted upon and passed in the General Assembly, the Senate, and signed by the Governor. The Attorney General agrees that a law may be invalid if the same text is not passed by both houses and approved by the Governor, but he argues:
"* * *. In this case, such a state of facts does not exist. The only version of Assembly Bill No. 415 which was available to the General Assembly for a vote on April 9, 1962, was the official copy reprint. This version of the bill had been sent to all of the members of the General Assembly before that meeting date, was inserted in the binders of the General Assembly, and was available in the Bill Room of the General Assembly * * *. There was no other version of the bill before the General Assembly. The same is true of the Senate and of the Governor. It is, therefore, submitted that under the reasoning and the holdings set forth in In re Jaegle, supra, and In re Chapter 147 of the Laws of 1946, supra, Chapter 152, P.L. 1962, is a valid enactment of the Legislature."
We prefer not to deal with this argument because we think the application must be dismissed on the second ground urged by the movants  that in the context of this statute the difference between "such interest" and "such an interest" is "immaterial and the effect * * * upon the law is de minimis."
The movants contend that "absolute correspondence in all respects is not required. Minor discrepancies and clerical *528 errors which do not change the substance and legal effect of the statute will be disregarded. The test is whether or not there is a material variance in the bills considered by both houses of the Legislature and the Governor." We agree with this statement of the law. Bull v. King, 205 Minn. 427, 286 N.W. 311 (Sup. Ct. 1939); Sharp v. Merrill, 41 Minn. 492, 43 N.W. 385 (Sup. Ct. 1889); Board of Control of Michigan State Prison v. Auditor General, 149 Mich. 386, 112 N.W. 1017 (Sup. Ct. 1907); cf. State ex rel. Foster v. Naftalin, 246 Minn. 181, 74 N.W.2d 249 (Sup. Ct. 1956); Beacon Club v. Buder, 332 Mich. 412, 52 N.W.2d 165 (Sup. Ct. 1952); 82 C.J.S. Statutes § 60, p. 94 (1953). Note that in the case of In re Jaegle, supra, 83 N.J.L., at p. 316, the Supreme Court pointed out that the omitted amendments were "material." Indeed, the applicants seem to agree that this is the general rule, but they contend that although "in New Jersey we have the materiality rule as an outside boundary, * * * we narrow the area of permissible variation in two ways * * *." Those two ways will be discussed hereafter.
The applicants also deny that the variance here is not substantial and insist it may not be dismissed as de minimis.
We are satisfied that the difference is insubstantial and that there is no difference in the meaning of the two versions of the law. We can think of no situation, and none has been suggested to us, which can possibly arise under this statute in which the difference will be of any significance. In many cases it will doubtless be difficult to determine whether the interest therein involved is "beneficial" within the meaning of the statute or, indeed, whether there is an "interest," but once that is determined, every section of the statute will operate exactly the same way under the words "such interest" as they would under the words "such an interest." As the intervenors say, "once the term `beneficial interest' is defined, and no matter how, there is absolutely no difference whatever in the meaning and effect of Chapter 152 whether the subsequent terminology is `such interest' or `such an interest.'"
*529 In Sharp v. Merrill, supra, the statute involved (Gen. Laws 1887, c. 127) provided:
"SECTION 1. That it shall be lawful for any person having or claiming title to any land, whether in his possession or whether it is vacant or unoccupied, or in the possession of any other person, to commence and maintain, at any time, an action against any person who claims any title or interest in said land, or lien upon the same adversely to him by or through any tax certificate or tax deed, heretofore or hereafter made, to test the validity of the tax sale and tax judgment under which the same was made to quiet his title to said land as against [such claims of such] adverse claimant, and to remove a cloud from his title, arising from such tax certificate or tax deed * * * notwithstanding any and all laws heretofore passed, which limited the time within which such action might be commenced or defense interposed."
The words "such claims of such" were contained in the bill passed by the Legislature but were omitted from the bill signed and approved by the Governor. It was argued that therefore the bill had never been constitutionally passed and approved. The Minnesota Supreme Court rejected the attack saying:
"* * * Whether these words be inserted or omitted, the effect of the act would be the same. In either case the plain meaning of the statute would be to limit its application to claims of title, interest, or lien, by or through tax certificates or tax deeds. An omission of words from the enrolled bill, which does not change the substance or legal effect of the statute as it passed the legislature, is wholly immaterial. Stein v. Leeper, 78 Ala. 517, 518; People ex rel. Gale v. Supervisors, 16 Mich. 254; Smith v. Hoyt, 14 Wis. 252. * * *"
In Bull v. King, supra, the bill passed by the legislature amended "subsection (d)" and provided for a tax credit to savings banks "equal to the interest and dividends paid or credited during the taxable year to its depositors." The bill signed by the governor purported to amend "subsections (c) and (d)" and gave a credit to "an amount equal to the interest and dividends paid or credited during the taxable year of its depositors." The court held the variance was immaterial, saying:
*530 "The bill presented to the governor for his approval must be the same bill which was passed by the legislature. This requirement is mandatory. If there is a material variance between them, the bill presented to the governor cannot be said to be the same bill which was passed by the legislature. In that situation he approved not a bill passed by the legislature, but another. A material variance between the bill passed by the legislature and that approved by the governor invalidates the entire enactment. * * *
Absolute correspondence is not required. Minor discrepancies and clerical errors which do not change the substance and legal effect of the statute will be disregarded. * * *." (286 N.W., at p. 313)
We now turn to the arguments advanced by the applicants for the proposition that, even if the variance is not material, we do not have the latitude to reject immaterial variations possessed by the courts of Minnesota and the other jurisdictions which follow the materiality rule. This argument is predicated principally upon the following portion of N.J.S.A. 1:3-1:
"* * * The Law Revision and Bill Drafting Commission is authorized to correct in the text, but not in the title, of any law, such errors in references to other laws and in punctuation and spelling, and other obvious errors in form, which will not affect the substance of the law, as shall be approved by the Attorney General and when so directed the Secretary of State shall make such corrections in preparing the law for printing. * * *"
The applicants argue that this language is a declaration by the Legislature that the only errors which may be corrected, or held to be immaterial by the courts, are errors (1) "in reference to other laws" (2) "in punctuation," (3) "in spelling" and (4) "other obvious errors in form." We hold that, assuming N.J.S.A. 1:3-1 does so limit the right of the Law Revision and Bill Drafting Commission and the Attorney General to correct errors, it does not forbid the courts to declare other variances immaterial.
Finally, the applicants argue that N.J.S.A. 1:7-1 et seq. and N.J. Const. (1947), Art. IV, Sec. IV, par. 6, dictate strict adherence to the requirement that a bill contain the identical language at all critical steps in the legislative *531 process, and compel us to declare fatal any variance which does not come within the language of N.J.S.A. 1:3-1. We disagree. "It is * * * well settled that our courts will not set aside the actions of the Legislature unless the unconstitutionality of what has been done is manifest." In re McGlynn, supra, 58 N.J. Super., at p. 28. Hence the courts should not set aside legislation for immaterial trivialities.
For the foregoing reasons, the application is dismissed. The Attorney General should prepare the necessary judgment and present it to the applicants and the intervenors for their consent as to form, or settle it on notice.