STATE ex rel. WALLACE B. DOUGLAS v. SAVINGS BANK OF ST. PAUL.[1]

November 21, 1902.

Nos. 13,224—(115).

### Savings Bank—Capital Stock.

The Minnesota Savings Association was incorporated under Laws 1867, c. 23. By Sp. Laws 1873, c. 117, the name was changed to Savings Bank of St. Paul, and a capital stock of $100,000 was provided; such capital to be employed in the business, and to become a guaranty fund. *Held*, such stock is not within the constitutional provisions imposing a double liability, and the depositors are not creditors having the right to enforce such a liability.

In proceedings instituted in the district court for Ramsey county by plaintiff on relation of the attorney general, a receiver was appointed for defendant, an insolvent corporation. The assets being insufficient to pay the depositors in full, application was made by the receiver, under Laws 1899, c. 272, for an order making an assessment upon the stock of the insolvent bank. From an order, Brill, J., denying his application, the receiver appealed. Affirmed.

*J. C. Michael*, for appellant.

*Stevens, O'Brien, Cole & Albrecht, Oscar Hallam, Grosvenor P. O'Neall* and *Samuel Whaley*, for respondents.

LEWIS, J.

Under the provisions of Laws 1867, c. 23, the Minnesota Savings Association was incorporated; and by Sp. Laws 1873, c. 117, the name was changed to Savings Bank of St. Paul, and the corporation was authorized to establish $100,000 capital stock, to be divided into shares of $100 each; such capital to be employed in the business as might be prescribed by the trustees. By this act such capital was made a guaranty fund, liable at all times to the depositors and other creditors of the association. It was further enacted that ten per cent. of the net profits of the business

[1] Reported in 92 N. W. 403.

should be set apart annually, until the same should amount to twenty per cent. of the capital, as a reserve and contingent fund, and the remainder of net profits, after providing for the payment of interest to depositors according to law and the rules of the association, to be divided equally among the stockholders according to their percentage of shares.

In 1899 the corporation became insolvent, and a receiver was appointed. The assets were insufficient to pay the depositors in full, and the receiver instituted proceedings under Laws 1899, c. 272, to assess the stock, and enforce the liability of the stockholders for the deficiency. The trial court denied the application, and the receiver appealed.

The General Laws of 1867, under which the association was originally incorporated, provided that any number of persons, not less than five, might associate themselves, and become incorporated as a savings association. The incorporators constituted the board of trustees, with power to fill vacancies by appointment. There was no provision for capital stock, and appellant contends that stock issued under the special law was of such character as to bring it within the constitutional provision imposing a double liability, and that the depositors were creditors of the corporation, entitled to enforce that liability against the stockholders. Our views in reference to these questions cannot be better stated than as set forth in the language of the learned trial judge:

"There seems to be no doubt that prior to the law of 1873 * * * this bank was a savings institution, pure and simple; but it is claimed on behalf of the petitioner that under the law of 1873 the nature of the institution and the relations of the depositors to it were so changed that it ceased to be distinctly a savings institution." * * *

"Confusion has arisen out of the use of the words 'capital stock' and 'stockholders' in the law of 1873. It will be observed that the stock provided for in that law did not possess the incidents of stock ordinarily, nor did the holders have the usual rights of stockholders in ordinary commercial corporations. The stock did not represent the assets of the institution. The holders of stock had no power to elect the trustees, and had no voice in the management of the institution. The stockholders simply invested their money in the institution. The money invested was to be a guar-

anty fund to the depositors, and holders were to receive a contingent share of the profits. The institution was still a savings bank, with the same rights, duties, and limitations as before, except that the money paid in on the stock could be employed as the trustees saw fit; and the profits, above a certain amount, were to be paid by the trustees to the holders of the stock. The relation of the depositors to the bank was not changed, except that they were entitled to the profits to a certain amount only. The nature of their deposits was not changed, nor was their relation to each other changed. The bank was still their agent or trustee, and not their debtor. The most that can be said is that, after the issuance of the stock, the bank, while operated for the primary benefit of depositors, was not to be operated for their exclusive benefit; other beneficiaries, whose rights were subordinate to theirs, being introduced.

But the fact that the trust cast on the bank was enlarged, and that holders of stock were also made contingent beneficiaries, did not take the case out of the principle upon which set-off is disallowed in case of savings institutions. While the bank was solvent, the funds were the funds of the depositors, and the holders of the stock, and not of the corporation. The stock having been lost, the funds now are the funds of the depositors. The so-called commercial deposits were equally trust money with the savings deposits. Both went into one fund. The only difference between the two, if that is a difference, is that the bank permitted the commercial deposits to be withdrawn with more facility than the others. But it is to be assumed that the bank received them under the law, and the law makes no distinction among depositors; and it would seem that the commercial depositor was entitled to interest upon his deposit upon the same conditions as the other depositors, unless he waived it."

For these reasons, the order is affirmed.