WYOMING TRUST AND MANAGE-
MENT COMPANY a corporation and
trust company duly licensed and chartered to do business under the laws of
Wyoming, Appellant (Petitioner),

v.

Dwight D. BONHAM, State Examiner and
ex-officio member of Wyoming Financial Institutions Board; et al., Appellees
(Respondents).

No. 84–73.

Supreme Court of Wyoming.

Jan. 24, 1985.

Rodger McDaniel, Southeast Wyoming Law Offices of McDaniel & Salazar, Cheyenne, for appellant.

A.G. McClintock, Atty. Gen., Peter J. Mulvaney, Deputy Atty. Gen., John W. Renneisen, Sr. Asst. Atty. Gen., and Patrick R. Day, Legal Intern, Cheyenne, for appellees.

Before THOMAS, C.J., and ROSE, ROONEY, BROWN and CARDINE, JJ.

BROWN, Justice.

This appeal involves the question of whether trust companies have the authority to open a branch office in Wyoming. Appellant Wyoming Trust and Management Company sought a declaratory judgment in the First Judicial District to interpret the Trust Company Act (§ 13–5–101 et seq., W.S.1977, of the Banking Act). Appellant sought declaratory relief after being denied permission to open a branch office by appellee State Examiner Dwight Bonham. This decision was affirmed by the district court.

We will affirm.

Appellant raises the following issues on appeal:

"*Issue No. 1:* Do the provisions of W.S. 13–5–101(a) and W.S. 13–5–110 (1977), which statutes grant certain powers and rights to trust companies, include the authority to open a branch office?

"*Issue No. 2:* Do the provisions of W.S. 13–5–104 (1977) or any other provision of the Trust Company Act, i.e. 13–5–101, et seq., require that a trust company conduct its business in only one community or otherwise preclude a trust company from opening a branch office elsewhere within the boundaries of the State of Wyoming?"

State Examiner Bonham denied appellant's petition believing he had no statutory authority to permit a trust company to

branch. The trial court found that the present Wyoming statutes do not permit a trust company to open a branch office. The court specifically found that if a trust company were allowed to branch, then the locality impact analysis required before a financial institution can be opened under §§ 13–2–211 and 13–2–212, W.S.1977, would be circumvented:

"Examining all of these statutes [§§ 13–5–104, 13–2–211, 13–2–212, W.S.1977] in pari materia, as we must do, it seems very evident that if plaintiffs were entitled, as they claim, to open branch offices in any other city or town in the state, having once been chartered for a particular community, and as a matter of right are entitled to do so without complying with the provisions set forth above relating to the ascertainment of public need and convenience *in the community* where the proposed branch might be established, the legislative intent for protection of the public good would have been entirely avoided. It seems abundantly clear that the legislative intent is to require a separate charter for a financial institution in each community in which it may desire to operate, and compliance with all of the foregoing statutory provisions which require findings of community interest for the particular community where the financial institution is to be established.

"In the instant case, the plaintiff was chartered to provide a trust company service in the community of Gillette, in Campbell County, Wyoming. Plaintiff now seeks to open a branch office, without complying with the application procedures and chartering procedures a second time, in the city of Casper in Natrona County, and perhaps in other communities in the state. The legislature has said that before granting a charter, the bank examiner must first make an investigation and examination of 'the need in the community,' 'the adequacy of existing financial facilities,' and the effect that the proposed institution would have upon existing financial institutions in the

community; and the ability of the community to support the proposed institution, including existing competition, the economic history of the community,' etc. Plaintiff would say that the state examiner has no right to make such an examination and investigation and approve or disapprove the granting of a charter in Casper, Wyoming, to this plaintiff, since this plaintiff has already had a charter granted to it to operate as a trust company in *Gillette*, Wyoming."

I

It is generally held that there is no right for a bank to open branch banks in the absence of express statutory authorization. 10 Am.Jur.2d, Banks, § 324, p. 287 (1963). Such is an example of the so-phrased "silent prohibition" rule which articulates that since financial institutions are so closely regulated, they may not exercise any powers which are not expressly authorized by statute. *Farmers and Mechanics Savings Bank of Minneapolis v. Department of Commerce, Security Division*, 258 Minn. 99, 102 N.W.2d 827 (1960). See also 10 Am.Jur.2d, Banks, § 270, pp. 240–241 (1963).

Appellant concedes there is no direct express statutory authorization for a trust company to branch, but argues that certain provisions of the Trust Company Act authorize such branching by reference to other provisions. Specifically, appellant contends the general corporate powers granted trust companies under § 13–5–101(a), W.S.1977, and the reference made in § 13–5–110(a), W.S.1977, make trust companies subject to laws governing savings and loan associations which allow branch offices. However, a careful analysis of the legislative history of Wyoming branching laws indicates that such is not the case.

Chapter 5 of Title 13 governing trust companies has its legislative origins in Chapter 157 of the 1925 Wyoming Session Laws. This was the earliest law regulating financial institutions. The language used

in that act required that the certificate of articles of incorporation specifically state: "The *place* where [the financial institution's] office shall be located * * *." (Emphasis added.) This language was interpreted by District Judge John F. Raper in the case of Jackson State Bank v. Bonham, No. 73–545, Laramie County (1974), as prohibiting branch banking. In that case the court construed the statute to prohibit branch banking. The same statute regulates banks and trust companies.

It is important to note that the Wyoming Attorney General follows this interpretation evidenced by several opinions holding that banks have no authority to branch: " * * * [A] corporation organized to conduct a banking business in the State of Wyoming cannot operate at more than one location nor organize more than one bank under the same charter." Op.Wyo. Att'y Gen., pp. 165–166 (1930).

The above position was followed in subsequent opinions: 6 Op.Wyo.Att'y Gen. 159–160 (1963); and 31 Op.Wyo.Att'y Gen. 89 (1965). The State Examiner's office has also been in accord with the above interpretation and the legislature has not seen fit to change it, expressly voting down any attempt to legislate branch banking.

"Administrative interpretation of a state and opinions of the Attorney General are entitled to weight when the legislature has failed over a long period of time to make any change in the statute. Such failure is some indication of an acquiescence by the legislature to administrative interpretation and to the opinion of the Attorney General. [Citation.] * * * " Public Service Commission v. Formal Complaint of WWZ Company, Wyo., 641 P.2d 183 (1982).

The present act regulating trust companies (§ 13–5–101 et seq., W.S.1977) retains the single "place" of business language, § 13–5–102(b) referring to the articles of incorporation requirements in § 13–2–202. The legislature did not change the language and it appears the intent is to keep the effect of such single place of business limitation the same.

In contrast is the legislative history of the Savings and Loan Associations Act (§ 13–6–101, et seq., W.S.1977). That act was not taken from the 1925 Banking Act, but from an act passed in 1927 which created a new form of financial institution called "building and loan associations." The purpose of the act:

"Any association which shall be organized within this State for the purpose of accumulating funds from its members, share holders, or savings certificate holders, to be loaned to its members, or others, and any association, company, corporation, or syndicate that sells savings certificates payable by installment, shall, for the purposes of this Act, be known and considered as domestic building and loan associations; *provided, that this Act shall not apply to associations, or corporations legally engaged in the business of banking within this State.*" (Emphasis added.) Section 1, Ch. 103, S.L. of Wyoming, 1927.

The act expressly did not apply to financial institutions engaged in the business of banking under the 1925 Banking Act. It is important to distinguish which institutions the 1925 act applied to: banks, savings associations, trust companies, and loan and trust companies. Therefore, the "savings associations" created under the 1925 Banking Act were not the same institutions created under the 1927 act known as "building and loan associations." The former were regulated the same as banks, while the latter were governed by separate regulations not relating to banks.

Another important distinction between the 1925 and 1927 acts was that unlike the single *place* of business limitation in the 1925 act, the 1927 act provided for a *"principal* place of business." Section 2(b), Ch. 103, S.L. of Wyoming, 1927. This language does not appear to be as limiting as that found in the 1925 act.

In 1959, the Wyoming legislature passed the Guaranty Capital Savings and Loan Association Act. This act specifically placed Wyoming building and loan associations on equal ground with federally char-

tered savings and loan associations and subject to the same federal regulations. Federal regulations allowed savings and loan associations the power to branch and, therefore, Wyoming building and loan associations could now do the same with the state examiner's approval.

In 1977, the Wyoming legislature passed a comprehensive act consolidating all previous acts regarding financial institution regulation. The preamble of the act reads in part: "AN ACT to create W.S. 13–1–101 through 13–10–111; * * * relating to banks and other financial institutions; * * * eliminating duplications, redundancies and archaic provisions in Title 13 * * *." Ch. 67, S.L. of Wyoming, 1977. That act, which is the present form of Title 13, eliminated specific provisions for "savings associations," "trust banks" and "loan companies." Instead, Title 13 now applies to "banks" and "financial institutions" which includes banks, guaranty capital savings and loan associations, building and loan associations, trust companies, and state chartered credit unions. §§ 13–1–101(a)(iv) and 13–2–203, W.S.1977. The legislature deleted "savings associations" and "loan companies" from the statutory scheme, and probably should have deleted the reference in § 13–5–110(a), W.S.1977, to "savings associations and loan companies." This legislative oversight cannot be used to support appellant's contention that trust companies are to be regulated as "other financial institutions" such as guaranty capital savings and loan associations which historically were regulated under the 1927 act rather than being subject to regulation as a bank subject to the 1925 banking act and the express language of the statute alluding to "the" place of its office.

In summary, trust companies and savings and loan associations are organized under different statutes. Trust companies and banks are organized under § 13–2–202, W.S.1977, and must include the *"place where its office shall be located and its operations conducted,"* in its articles of incorporation. Conversely, savings and loan associations are organized under § 13–6–102, W.S.1977, and must state where the *"principal place* of business of the association is to be located," in its articles of incorporation. The phrase, "principal place of business" is a much broader term than "place where * * * its operations conducted," and suggests more than one place of business is permitted.

We do not believe it is proper to allow a trust company the power to open a branch office under the authority of the savings and loan association provisions. To do so is to ignore the legislative history which created two separate and distinct financial institutions. There is no statutory authority which gives trust companies the power to branch nor do we think the legislature intended such power be given. "All statutes are presumed to be enacted with the full knowledge of the existing state of law with reference thereto." *Brittain v. Booth,* Wyo., 601 P.2d 532, 534 (1979). We will not add words to a statute. *Matter of Adoption of Voss,* Wyo., 550 P.2d 481 (1976).

II

As stated previously, the trial court ruled that if trust companies were permitted to branch, it would circumvent the locality impact analysis required by §§ 13–2–211 and 13–2–212, W.S.1977. Appellant claims this is unimportant since the same provisions govern savings and loan associations which do have the power to branch.

Section 13–7–102(a), W.S.1977, specifically states that guaranty capital savings and loan associations in Wyoming are subject to federal statutes, rules and regulations governing the same. Section 1464(e) of the Home Owners' Loan Act of 1933 provides for a locality impact analysis similar to Wyoming's that must be performed before each branch of a savings and loan association is opened. 12 U.S.C. § 1464(e) (1976). Since a locality impact analysis must be performed under federal law, appellant's argument that savings and loan associations need no such analysis before opening a branch must fail. The trial court was correct when he held that allowing trust

companies to branch would circumvent the locality impact analysis requirement of §§ 13–2–211 and 13–2–212, W.S.1977.

Having found no reversible error in the trial court's holding, the judgment is affirmed.

Lawrence B. Hartnett, Hartnett & Moyer, Jackson, Richard J. Mulligan, Jackson; and Andrew S. Hartnett, Honolulu, Hawaii, signed the brief on behalf of petitioners-plaintiffs.

Frank D. Neville and T. Michael Golden, Williams, Porter, Day & Neville, P.C., Casper, signed the brief on behalf of defendant-respondent Richard G. Sugden, M.D.

Paul B. Godfrey, Godfrey & Sundahl, Cheyenne, signed the brief on behalf of defendant-respondent Kenneth L. Lambert, M.D.

J.E. Vlastos, Vlastos, Reeves, Murdock & Brooks, P.C., Casper, signed the brief on behalf of defendants-respondents Charles Everts, M.D. and Teton Radiology Associates, Inc.

Carl L. Lathrop, Lathrop & Uchner, P.C., Cheyenne, signed the brief on behalf of defendant-respondent James R. Little, M.D.

Lawrence A. Yonkee, Redle, Yonkee & Arney, Sheridan, signed the brief on behalf of defendant-respondent Thomas J. Pockat, M.D.

Before THOMAS, C.J., and ROSE, ROONEY, BROWN and CARDINE, JJ.